# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-3324

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| Jerald Vincent Proell, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: February 13, 2007
Filed: April 23, 2007

———————

Before LOKEN, Chief Judge, SMITH and GRUENDER, Circuit Judges.

———————

SMITH, Circuit Judge.

Jerald Vincent Proell was charged with three illegal weapon and narcotics offenses,[1] after officers executing search warrants on Proell's property discovered firearms, ammunition, drugs, and drug paraphernalia. Proell moved to suppress the evidence, claiming that the initial warrant lacked probable cause and that the

———————

[1]Proell was charged with possession of an unregistered firearm, in violation of 21 U.S.C. §§ 5861(d) and 5871, and two separate counts of possession of firearms and ammunition by an unlawful user of a controlled substance, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2)

subsequently discovered evidence was "fruit of the poisonous tree." The district court[2] denied Proell's motion, finding that probable cause existed. Proell was subsequently convicted by a jury on all three counts and sentenced to 41 months' imprisonment. Proell appeals the district court's denial of this motion to suppress. We affirm.

## I. *Background*

Proell resided at 79 4th Avenue Southwest, in Garrison, McLean County, North Dakota. Proell operated an auto-repair shop at the same address located just behind his house. Leslie Huston, Proell's long-time girlfriend, lived in a third structure located behind the auto-repair shop with her two teenage sons, Bryant and Jerrod Huston. The Hustons' property, 78 3rd Avenue Southwest, and Proell's property were contiguous, sharing a back property line.

The McLean County Sheriff's Department received information that Bryant Huston illegally hunted deer. On April 6, 2005, a North Dakota state district judge[3] heard testimony from Lieutenant Sylvin Brunsell of the McLean County Sheriff's Department and North Dakota Game Warden Ken Skuza, in support of two search warrants to search for evidence of the unlawful hunting. One warrant covered both 78 3rd Avenue Southwest—the Hustons' residence—and 79 4th Avenue Southwest—Proell's residence and shop. The other warrant covered a different residence.

After hearing testimony from Lt. Brunsell and Warden Skuza, the judge found that there was probable cause to issue the search warrants. The search warrant pertaining to the Huston and Proell properties, signed by the judge, stated:

---

[2]The Honorable Daniel L. Hovland, Chief Judge, United States District Court for the District of North Dakota.

[3]The Honorable Bruce A. Romanick, State of North Dakota District Judge for the South Central Judicial District.

To any Peace Officer of this State:

Sworn testimony having been presented to me by Warden Ken Skuza and Lt. Sonny Brunsell that they has [sic] reason to believe that there is evidence at the structure(s), known as 79 4th Ave. SW and 78 3rd Ave. SW, Garrison, ND, including a shop, houses, other structures, and the open fields within the curtilage, namely: **Untagged deer heads, antlers, or other deer body parts, pictures of illegally taken deer, a 30.06 rifle and 30.06 ammunition, a .243 rifle and ammunition** which constitutes evidence of a criminal offense in violation of NDCC chapter 20.01 and I am satisfied that there is probable cause to believe that the property so described can be found at this address.

YOU ARE HEREBY COMMANDED to, within ten (10) days after receiving this Warrant, search the premisses so described during daytime hours and by knocking and announcing your presence and to seize the described property and to leave a copy of this Warrant at the premises and prepare a written inventory of the property seized and bring it before me.

Dated this 6 day of April, 2005

/s/ Bruce A. Romanick
DISTRICT JUDGE

(Emphasis in original).

State authorities executed the warrants the same day they were issued. The search of the Hustons' residence revealed deer antlers, eagle talons, and a rifle. The search of Proell's residence and shop uncovered marijuana, drug paraphernalia, and firearms.[4] After discovering these items on Proell's property, the authorities suspended the search and applied for a second search warrant. That same day, the state court judge issued a second search warrant for both properties, this time authorizing the

---

[4]It is unclear whether these items were located at Proell's residence or in his shop.

-3-

officers to search for drugs, drug paraphernalia, evidence, records, and proceeds from drug transactions, and firearms. Items of this nature were seized from Proell's property during the second search.

A federal grand jury indicted Proell on four counts: possession of an unregistered firearm; possession with intent to distribute marijuana; possessing a firearm during, in relation to, or in furtherance of a drug trafficking crime; and possession of firearms by an unlawful drug user. On September 27, 2005, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) agents executed a federal arrest warrant on Proell at his residence. During a search incident to arrest, a glass pipe with drug residue and a baggie of methamphetamine were found in Proell's possession. Upon discovering these items, ATF Agent Jay McCrary applied for a federal search warrant covering Proell's residence. Once the search warrant was obtained, a third search of Proell's residence ensued. During this search, additional firearms and a large quantity of ammunition was seized from the residence.[5]

Proell filed a motion to suppress the evidence, arguing that there was no probable cause for the initial search of his property and that the warrant was based in part on false or misleading statements by Lt. Brunsell during the search warrant application hearing. Therefore, Proell argued, the search was illegal and all of the evidence subsequently discovered on his property should be excluded because it was "fruit of the poisonous tree." The federal district court held an evidentiary hearing on the issue. After considering Lt. Brunsell and Proell's testimony, and upon reviewing the record, the court found that Proell failed to meet his burden on his *Franks*[6] challenge. The court went on to state that "[e]ven assuming, arguendo, that [Proell]

---

[5]Following this search of Proell's property, a superseding indictment was issued, excluding two counts from the original indictment and adding one count based on the evidence discovered during the third search.

[6]*Franks v. Delaware*, 438 U.S. 154 (1978) (holding that the Fourth Amendment entitles a defendant to an evidentiary hearing about the veracity of a search warrant affidavit if the defendant can make a "substantial preliminary showing" that the affiant intentionally or recklessly included a false statement in the affidavit).

satisfied his initial burden under *Franks*, there was more than sufficient information presented to Judge Romanick to support a finding of probable cause even if the [challenged] portion of Lieutenant Brunsell's testimony was omitted." The court, in a footnote, noted that while it was not relying upon it, "the good faith exception to the exclusionary rule as announced in *United States v. Leon*, 468 U.S. 897 (1984), would likely operate in favor of the United States if suppression of the evidence was warranted."

At trial, a jury found Proell guilty, and the court sentenced him to 41 months' imprisonment. On appeal, Proell challenges the district court's denial of his motion to suppress, asserting there was no probable cause for the initial April 6, 2005 search warrant.

## II. *Discussion*

On appeal from the denial of a motion to suppress, we review the district court's findings of fact for clear error and review the court's determination of probable cause de novo. *United States v. Rodriguez-Lopez*, 444 F.3d 1020, 1022 (8th Cir. 2006). For a search warrant to be valid, the "warrant must be based upon a finding by a neutral and detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a crime, contraband, or a person for whose arrest there is probable cause may be found in the place to be searched." *Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998). "Probable cause to issue a search warrant exists when an affidavit [or testimony] in support of the warrant sets forth sufficient facts to establish that there is a 'fair probability that contraband or evidence of' criminal activity will be found in the particular place to be searched." *United States v. Davis*, 471 F.3d 938, 946 (8th Cir. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The determination of probable cause is made after considering the totality of the circumstances. *United States v. Gettel*, 474 F.3d 1081, 1086 (8th Cir. 2007). After a judge has issued a search warrant upon a finding of probable cause, "that finding deserves great deference." *Walden*, 156 F.3d at 870 (citing *Gates*, 462 U.S. at 236).

Thus, when reviewing the sufficiency of the testimony or affidavit supporting a search warrant that was found by the issuing judge to provide probable cause, we give great deference to the issuing judge's finding. *Id.*

However, before reviewing the existence of probable cause, we may consider the applicability of the good-faith exception to the exclusionary rule, as established in *Leon*. *United States v. Warford*, 439 F.3d 836, 841 (8th Cir. 2006). Under the good-faith exception, evidence seized pursuant to a search warrant issued by a magistrate that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable. Thus, if the officers acted in good-faith reliance on the warrant when they conducted the initial search of Proell's residence and shop, "then there is no need to visit the underlying question of probable cause." *Id.*

The "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006) (internal quotations and citation omitted) (alteration in original). The rationale for the good-faith exception is that "no justification exists to exclude evidence 'when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.'" *Id.* (quoting *Leon*, 468 U.S. at 920).

> It is the magistrate's responsibility to determine whether the officer's allegations establish proable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient . . . . Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

*Leon*, 468 U.S. at 921.

*Leon* identified four situations in which an officer's reliance on a warrant would be unreasonable: (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*"; and (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid. *Id*. at 923 (emphasis added); *Puckett*, 466 F.3d at 630.

Proell contends that the good-faith exception should not apply in this case because the testimony in support of the warrant was "so lacking in indicia of probable cause" that it was "entirely unreasonable" for the officers executing the warrant to believe that probable cause existed. "When assessing the objective [reasonableness] of police officers executing a warrant, we must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge." *United States v. Marion*, 238 F.3d 965, 969 (8th Cir. 2001) (internal quotations and citations omitted).

The initial search warrant was not based solely upon a written affidavit. Rather, the issuing judge found that probable cause existed to search the structures after hearing live testimony from two officers. During the warrant application hearing, the officers testified regarding Bryant Huston's suspected illegal poaching and why evidence of these crimes might be found on Proell's property. The testimony established that: (1) based on the knowledge and experience of the officers, evidence of Huston's illegal hunting was likely to be found on or near Huston's residence; (2) Huston's residence and Proell's property were in close proximity to each other, with the two properties sharing a back boundary line; and (3) Huston had access to Proell's property.

Following the initial examination of the officers, Judge Romanick raised two questions regarding the basis for searching Proell's and Huston's properties. To respond to the judge's questions, the government recalled Lt. Brunsell and Warden Skuza to the stand for further questioning by the State's Attorney. Upon hearing the additional testimony, Judge Romanick was satisfied that probable cause existed to search both Proell's and Huston's property.

Additionally, Lt. Brunsell provided further testimony at the motion to suppress hearing before the federal district court that had not been provided to the issuing state judge. Brunsell testified that he believed Bryant Huston had access to the shop and house on Proell's property because he had personally seen Huston on and around Proell's property. Brunsell also testified that "word throughout the area" of Garrison, North Dakota, a town of less than 1,500 residents, was that Proell "ha[d] taken care of [the Huston] boys all the time and they had access to everything on the two lots."[7]

Assuming, without deciding, that the testimony in support of the warrant failed to provide a sufficient nexus between Proell's property and the illegal activity being investigated, under the totality of the circumstances, we conclude that the executing officers were not "entirely unreasonable" in believing that the warrant was supported by probable cause. *See United States v. Carpenter*, 341 F.3d 666 (8th Cir. 2003) (finding affidavit in support of search warrant was not so lacking in indicia of probable cause as to render officer's belief in its existence entirely unreasonable, as would preclude admission of seized evidence under good faith exception, even though affidavit failed to indicate nexus between residence and suspected contraband). "'Entirely unreasonable' is not a phrase often used by the Supreme Court, and we find nothing in *Leon* or in the Court's subsequent opinions that would justify our dilution of the Court's particularly strong choice of words." *Carpenter*, 341 F.3d at 670.

_____

[7]At the time of the initial search, Proell had dated Leslie Huston, Bryant Huston's mother, for more than 16 years. Proell testified that he considered the Huston boys to be his own.

Considering that both the issuing state court judge and the district court determined that the testimony established probable cause for the search warrant to issue, we conclude that the officers were not entirely unreasonable in believing that the testimony provided probable cause to issue the warrant. *Puckett*, 466 F.3d at 629 (finding it not entirely unreasonable for officer to believe warrant supported by probable cause where issuing state judge, magistrate judge, and district judge all believed affidavit provided probable cause for warrant to issue); *Carpenter*, 341 F.3d at 670 (same).

### III. *Conclusion*

Accordingly, we affirm the district court's denial of Proell's motion to suppress.

_____