# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

––––––––––––––

No. 07-3097

––––––––––––––

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Burgess Jesse Perry II, | * | |
| | * | |
| Appellant. | * | |

––––––––––––––

Submitted: April 14, 2008
Filed: July 8, 2008

––––––––––––––

Before GRUENDER, BALDOCK[1] and BENTON, Circuit Judges.

––––––––––––––

GRUENDER, Circuit Judge.

Burgess Jesse Perry II appeals the district court's[2] denial of his motion to suppress evidence obtained in a search of his residence. Perry contends that the search

––––––––––––

[1]The Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit Court of Appeals, sitting by designation.

[2]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri, adopting the report and recommendations of the Honorable James C. England, Chief Magistrate Judge, United States District Court for the Western District of Missouri.

warrant was not supported by probable cause. Because the good-faith exception to the exclusionary rule applies, we affirm.

## I.    BACKGROUND

On January 10, 2003, Leslie Gregory was found dead inside a rolled tarp about 400 yards from her car in Moniteau County, Missouri. An autopsy revealed that she had been shot five times in the head with a .22 caliber weapon.

On July 7, 2003, the Moniteau County Sheriff's Department informed Deputy Ron Wallace of the Douglas County Sheriff's Department that the homicide of Gregory possibly occurred in Douglas County, Missouri. Based on information provided by a confidential informant, the Moniteau County Sheriff's Department believed that a man named Dobbie, later identified as Doy Porter, killed Gregory at Porter's residence in Douglas County on November 13, 2002.

According to the informant, Porter, Gregory, Fred Mansker, who was later identified as Perry, and the informant used controlled substances on the night before the homicide at Perry's residence, which he rented from Porter. The next day, the four spent the afternoon at Porter's residence. While the informant and Perry worked on a computer in the garage, Gregory and Porter began arguing over drugs. The argument escalated, and eventually Porter shot Gregory five times with a sawed-off .22 caliber rifle. Porter then threatened the informant by saying that "snitches die." Shortly thereafter, Perry and the informant returned to Perry's residence, and, after thirty minutes there, the informant returned to Moniteau County where he lived. Two days later, Porter called the informant and said he wanted to hide Gregory's car on the informant's grandparents' land in Moniteau County for a couple of days before having it crushed. Nearly two months later, Gregory's body and car were found at this location.

The informant, accompanied by a member of the Moniteau County Sheriff's Department, traveled to Douglas County. The informant identified Perry's and Porter's residences as the location of the events he had described. On July 10, 2003, Deputy Wallace prepared an affidavit as part of a search warrant application for Perry's residence.[3] The affidavit included the above-described information and stated that the sawed-off .22 caliber rifle, Gregory's purse, Gregory's cell phone, and papers, letters or documents concerning the homicide "could be" located at this residence. The affidavit also averred that the informant was credible because the informant described the alleged homicide in great detail and had provided reliable information on three prior occasions.

Deputy Wallace took the affidavit to the county prosecutor who reviewed it, and Deputy Wallace signed the affidavit in the prosecutor's presence. The prosecutor prepared the search warrant application, which he and Deputy Wallace signed. Deputy Wallace then presented the application and affidavit to Douglas County Circuit Judge John Moody. Judge Moody issued the search warrant. Although the search of Perry's residence provided no evidence related to the homicide, it did result in the seizure of eighteen firearms and ammunition as well as methamphetamine and marijuana.

The State of Missouri charged Perry with possession of controlled substances. Perry filed a motion to suppress the evidence seized from his residence, claiming that the search warrant lacked probable cause. Judge Moody granted Perry's motion. Thereafter, a federal grand jury indicted Perry on two counts of possession of firearms

---

[3]Another deputy in the Douglas County Sheriff's Department prepared a separate search warrant application for Porter's residence. Both applications were presented to the judge at the same time, and both warrants were executed at the same time. Only the search of Perry's residence is at issue in this case.

and ammunition by a prohibited person in violation of 18 U.S.C. § 922(g)(1), (3).[4] Perry filed another motion to suppress the evidence, again arguing that the search warrant lacked probable cause.

At the suppression hearing, Deputy Wallace testified that he was aware of additional information that he had failed to include in his affidavit. Specifically, the informant had told him that Gregory had a cell phone and a purse with her, and Deputy Wallace knew that the police did not recover these items when they found her body. The informant also indicated that he had observed several firearms at Perry's residence the night before the homicide. The magistrate judge prepared a report and recommendations denying the motion to suppress and concluding that the search warrant was supported by probable cause and, alternatively, that the good-faith exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897 (1984), applied. After the district court adopted the report and recommendations, Perry entered a conditional guilty plea to count one of the indictment, preserving his right to appeal the denial of his motion to suppress. The district court sentenced Perry to sixty-five months' imprisonment. Perry now appeals the district court's denial of his motion to suppress.

## II.    DISCUSSION

On appeal from the denial of a motion to suppress, we review a district court's findings of fact for clear error and its determination of probable cause and the application of the *Leon* exception de novo. *United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007), *cert. denied*, 552 U.S. ---, 128 S. Ct. 1704 (2008).

---

[4]Count one of the indictment charged Perry with possession of firearms and ammunition seized pursuant to the search warrant at issue in this case. Count two of the indictment charged Perry with possession of firearms and ammunition seized pursuant to a separate search warrant issued months later in November 2004.

"However, before reviewing the existence of probable cause, we may consider the applicability of the good-faith exception to the exclusionary rule . . . ." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007). Under the good-faith exception, evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable. *Id.* "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *Id.* (internal quotation omitted) (alteration in original). "When assessing the objective [reasonableness] of police officers executing a warrant, we must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge." *Id.* at 431(quotation omitted) (alteration in original).

"In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Leon*, 468 U.S. at 921. However,

> *Leon* identified four situations in which an officer's reliance on a warrant would be unreasonable: (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*Proell*, 485 F.3d at 431 (internal quotations omitted). Perry only contends that the third situation exists here, asserting that Deputy Wallace's affidavit in support of the search warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *See Leon*, 468 U.S. at 923 (quotation omitted).

-5-

Specifically, Perry argues that the affidavit (1) failed to establish a reasonable nexus between Perry's residence and the evidence sought to be obtained and (2) contained information that was stale because the crime occurred eight months earlier.

Although "there must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue," *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000), we have held that an officer executing a search warrant may rely in the permissibility of the issuing judge's inference that such a nexus exists when that inference has "common sense appeal," *see United States v. Carpenter*, 341 F.3d 666, 671-72 (8th Cir. 2003). Here, the affidavit established that Porter, the alleged murderer, owned both residences, that Perry's residence was involved in the events surrounding the homicide, that Porter sought to hide evidence of the homicide on someone else's residence, and that the informant was reliable.[5] Gregory, Porter, Perry and the informant used controlled substances at Perry's residence the night before the homicide, and Perry and the informant returned to Perry's residence shortly after the homicide. Soon thereafter, Porter asked the informant if he could store Gregory's car on the informant's grandparents' land. Additionally, although not expressed in the affidavit, Deputy Wallace knew that Gregory had a cell phone and a purse with her when she was killed, which had not yet been found, and that the informant had observed several firearms at Perry's residence. As a matter of common sense, one could reasonably infer that Porter had stored the sawed-off .22 caliber rifle, the cell phone or the purse at Perry's residence as he did with Gregory's car on the informant's grandparents' land or that other evidence of the homicide may have been left at Perry's residence because the participants and witnesses to the homicide spent time at the residence shortly before and shortly after the homicide. Therefore, we cannot say that it was unreasonable for Deputy Wallace to rely on the permissibility

---

[5]The affidavit had established that the informant had provided reliable information to police on three prior occasions and had witnessed and provided significant details about the homicide.

of Judge Moody's inference of a nexus between the evidence sought and the place to be searched.[6]

Perry further argues that reliance on the affidavit was entirely unreasonable because the information in the affidavit was stale since the crime occurred eight months before the search. "There is no bright-line test for determining when information is stale. . . . Time factors must be examined in the context of a specific case and the nature of the crime under investigation." *United States v. Summage*, 481 F.3d 1075, 1078 (8th Cir. 2007), *cert. denied*, 552 U.S. ---, 128 S. Ct. 875 (2008) (quoting *United States v. Koelling*, 992 F.2d 817, 822 (8th Cir. 1993)). In *United States v. Maxim*, we held that four-month-old information indicating that the suspect possessed firearms was not stale because survivalists and firearm enthusiasts retain their weapons for a long period of time. 55 F.3d 394, 397-98 (8th Cir. 1995). In *United States v. Rugh*, we held that an officer had a good-faith reliance on a warrant even though it contained sixteen-month-old information that the suspect possessed child pornography because pedophiles tend to retain such materials for long periods of time. 968 F.2d 750, 753-54 (8th Cir. 1992). In this case, Porter sought to store Gregory's car on the informant's grandparents' land for a couple of days, but the car remained on the land for nearly two months. Because our case law suggests that firearms may be retained for long periods of time and because Porter failed to destroy other evidence expeditiously, Deputy Wallace reasonably could have believed that Porter had given Perry the .22 caliber rifle and that Perry had retained the rifle eight months after the homicide. Although this evidence may be insufficient to support a

---

[6]Another factor that adds to the reasonableness of Deputy Wallace's belief that the affidavit was not so lacking in probable cause was the county prosecutor's determination that the affidavit provided probable cause for the search. *See United States v. Hallam*, 407 F.3d 942, 947 (8th Cir. 2005) (holding that an officer may reasonably defer to the judgment of the prosecutor and the issuing judge that the affidavit provided probable cause); *United States v. Terry*, 305 F.3d 818, 823 (8th Cir. 2002) (same). The prosecutor in this case reviewed the affidavit and did not indicate that it lacked probable cause.

probable cause finding, we do not think the information was clearly stale such that the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *See Rugh*, 968 F.2d at 753-54.

## III.   CONCLUSION

Based on the totality of the circumstances, Deputy Wallace's affidavit was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Because it was objectively reasonable for Deputy Wallace to rely in good faith on the warrant, we conclude that the *Leon* exception to the exclusionary rule applies. Accordingly, we affirm the district court's denial of Perry's motion to suppress.

_____