# United States Court of Appeals

### For the Eighth Circuit

_____

No. 21-2642
_____

United States of America

*Plaintiff - Appellee*

v.

Philip Maccani, also known as Phillip Maccani

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids
_____

Submitted: April 13, 2022
Filed: September 20, 2022
_____

Before SMITH, Chief Judge, WOLLMAN and GRASZ, Circuit Judges.
_____

SMITH, Chief Judge.

Philip Maccani pleaded guilty to one count of possession of an unregistered National Firearms Act firearm, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871.

On appeal, Maccani argues that the district court[1] erred in denying his motion to suppress evidence obtained from the trailer he occupied. We affirm.

## I. *Background*

When a storm caused Maccani's neighbors to experience a power outage, the neighbors attempted to start a generator to provide power to his house. Disturbed by the generator's noise, Maccani entered his neighbor's property and, according to the neighbors, yelled at them and threatened them. Maccani's behavior so startled his neighbors that they retreated into their residence and called the police.

Two officers, Deputies Dylan Schmid and Heath Omar, of the Linn County Sheriff's Office, arrived shortly thereafter. They found Maccani standing near the side door of his trailer, which was parked next to Elkhorn Drive. Maccani explained to the officers that he was frustrated with his neighbors for running their generator while he was trying to play guitar. One officer saw Maccani "holding a firearm in his right hand and attempting to conceal the firearm behind the doorjamb." R. Doc. 61, at 4. He directed Maccani to show his concealed hand. Maccani refused. He explained that he would not show both hands because he had a "shotgun in his other hand." *Id*. Maccani went in the trailer and put the firearm down. Then he exited the trailer and approached the officers. As he approached, one officer observed a firearm tucked into Maccani's back waistband. When the officers told him to stop, he removed the firearm and "placed [it] on the floor inside the doorway of his trailer." *Id*. at 5. He walked out of the trailer and knelt down but soon became agitated and stood up. After he would not comply with their orders to stay seated, the officers wrestled Maccani to the ground and placed him in handcuffs.

---

[1]The Honorable Charles J. Williams, United States District Judge for the Northern District of Iowa.

As the officers placed Maccani in the back of their patrol vehicle, they smelled alcohol on his breath. While seated in the patrol car, Maccani banged his head against the security window, causing two lacerations to his forehead. This injury required him to be taken to a hospital.

Prior to departing, Maccani asked the officers that his trailer be secured by his father. While securing the trailer, one officer observed a lit candle in the back of the trailer. Upon request, Maccani's father gave the officers consent to enter the trailer to put out the candle. Inside the trailer, "an officer observed a 'sawed-off single shot 12-gauge shotgun' and a camouflage Daisy Powerline 35 air rifle . . . lying on the bed." *Id.* at 6.

Thereafter, the officers acquired a search warrant for the trailer. The search revealed "a loaded Harrington & Richardson Topper 18 12-gauge weapon made from a shotgun" as well as other firearms, contraband, and other paraphernalia.[2] *Id*. The sawed-off shotgun was not registered to Maccani in the National Firearms Registration and Transfer Record. Having been shortened, the shotgun had an overall length of less than 26 inches.

---

[2]Other items found in Maccani's trailer included

> a loaded Kel-Tec PMR-30 .22 caliber pistol that had one round chambered, a pill bottle that contained 2.82 grams of a green leafy substance which field tested positive for marijuana, a bandolier that contained 23 rounds of 12-gauge Winchester Super X Double Buckshot ammunition, [and] three pill bottles that contained unknown amounts of .22 caliber ammunition.

*Id*.

Maccani was charged with possessing an unregistered National Firearms Act firearm. Maccani moved to suppress the items removed from his trailer. The magistrate judge recommended that the district court deny the suppression motion. According to the magistrate judge, (1) "the search warrant established probable cause and was sufficiently particular so as to satisfy the Fourth Amendment"; (2) "even if the warrant was constitutionally deficient, the subsequent search of defendant's trailer was lawful under both the *Leon*[3] good[-]faith exception and the automobile exception to the Fourth Amendment's warrant requirement"; and (3) "the seizure of defendant's shotgun was justified under the plain view doctrine." R. Doc. 57, at 17. Accordingly, "none of the evidence seized was fruit of the poisonous tree." *Id.*

Maccani objected to the magistrate judge's report and recommendation. After some factual modifications, the district court adopted the report and recommendation and denied Maccani's motion. The court concluded:

> The warrant was validly issued and executed, the search of the trailer was lawful under either the search warrant or automobile exception, Deputy Omar's entry into defendant's trailer was justified under either the third party consent or community caretaking doctrines, and officers would have inevitably discovered the shotgun during the search under the warrant or automobile exception. The shotgun and ammunition found inside the trailer are therefore not fruits of any conceivable poisonous tree.

*United States v. Maccani*, 526 F. Supp. 3d 420, 458–59 (N.D. Iowa 2021).

Maccani pleaded guilty to possession of an unregistered National Firearms Act firearm, reserving the right to appeal the denial of his suppression motion.

---

[3]*United States v. Leon*, 468 U.S. 897, 922–23 (1984).

## II. *Discussion*

On appeal, Maccani argues that the district court erred in denying his suppression motion. He contends that the warrant was invalid because it lacked probable cause and failed to describe with particularity the items that police intended to seize.

Regarding a district court's denial of a motion to suppress, we review legal conclusions de novo and factual findings for clear error. *United States v. $45,000.00 in U.S. Currency*, 749 F.3d 709, 713 (8th Cir. 2014). We "will affirm the district court's denial of a motion to suppress evidence unless it is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." *Id.* at 713–14 (internal quotation marks omitted).

The Fourth Amendment to the United States Constitution provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." "To be valid under the Fourth Amendment, a search warrant must be supported by a showing of probable cause." *United States v. Summage*, 481 F.3d 1075, 1077 (8th Cir. 2007). "Whether probable cause exists depends upon the totality of the circumstances, but it requires a showing of facts sufficient to create a fair probability that evidence of a crime will be found in the place to be searched." *United States v. Gabrio*, 295 F.3d 880, 882–883 (8th Cir. 2002) (cleaned up).

> While a warrant may issue only upon a finding of probable cause, [the Supreme] Court has long held that the term probable cause means less than evidence which would justify condemnation and that a finding of probable cause may rest upon evidence which is not legally competent in a criminal trial.

*United States v. Ventresca*, 380 U.S. 102, 107 (1965) (cleaned up). "The essential protection of the warrant requirement of the Fourth Amendment . . . is in requiring

that the usual inferences which reasonable men draw from evidence be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Illinois v. Gates*, 462 U.S. 213, 240 (1983) (cleaned up). When reviewing a probable-cause determination, we give deference to the issuing magistrate's determination. *Id.* at 236. The Fourth Amendment requires that the issuing "magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing." *Id.* (cleaned up).

Maccani argues that the warrant was invalid. He contends that the officer who submitted the warrant application lacked the background, training, or knowledge to assert that the suspected marijuana taken from the trailer was in fact marijuana. He also challenges the warrant as deficient in its specificity of what exactly was intended to be seized.

The search-warrant application contained an affidavit from one of the officers along with two attachments. The affidavit indicated that the officers had observed that Maccani possessed firearms, ammunition, and what appeared to be marijuana. Attachment A noted that the officers "believed that . . . multiple firearms, offensi[v]e weapons[,] and illegal narcotics [we]re . . . contained inside" of Maccani's trailer. R. Doc. 31-1, at 11. Attachment A also detailed Deputy Schmid's years of experience in law enforcement and time at the Linn County Sheriff's Office. The affidavit further recorded that (1) Maccani was in illegal possession of this property; (2) the property was "used or possessed with the intent to be used as the means of committing a public offense or concealed to prevent an offense from being discovered"; and (3) the property was "relevant and material as evidence in a criminal prosecution." *Id.* at 10. Both the officer who drafted the warrant and the issuing magistrate judge signed the warrant.

Maccani compares the warrant application in this case with the wholly insufficient warrant at issue in *Groh v. Ramirez*, 540 U.S. 551 (2004). The district court rejected Maccani's comparison:

> Unlike the warrant at issue in *Groh*, the warrant here is not "plainly invalid." The warrant here contains significantly more information than in *Groh*. In addition to a description of defendant's trailer and the address of where it could be found, the warrant included a number of specific items which could reasonably be construed as objects of the search, albeit in narrative form.

*Maccani*, 526 F. Supp. 3d at 446.

We agree with the district court's analysis. "The [Fourth Amendment's] particularity requirement 'is a standard of "practical accuracy" rather than a hypertechnical one.'" *Summage*, 481 F.3d at 1079 (quoting *United States v. Peters*, 92 F.3d 768, 769–70 (8th Cir. 1996)). The description of items found in the warrant meets the pragmatic standards imposed by the Fourth Amendment.

The district court further concluded that, even if it were mistaken in finding that the warrant was valid, the good-faith exception applied. "Under the good-faith exception, evidence seized pursuant to a search warrant issued by a magistrate that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007).

Maccani contends that this exception does not apply because the officers' reliance on the warrant was unreasonable. Maccani argues that the officers' reliance on the warrant was unreasonable because (1) the warrant lacked particularity about

what was to be seized and, (2) since one of the officers drafted the warrant himself, it could not reasonably be argued that he relied upon the issuing magistrate's approval.

> Law enforcement's reliance on a warrant is unreasonable under *Leon*
>
> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*Id.* at 431 (internal quotation marks omitted). There is no evidence of any of these deficiencies in this case. Maccani has not shown that the officers' reliance on the warrant was "objectively [un]reasonable." *Id.* at 430. The warrant application affidavit passes muster. It was neither deceptive nor deficient. The district court did not err in admitting evidence found pursuant to the warrant.[4]

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____

---

[4]Because we hold that the warrant was not defective and that the good-faith exception applies in any event, we need not address the other warrant exceptions. *See Bakke v. Murex Petroleum Corp.*, 342 F. App'x 230, 234 (8th Cir. 2009) (unpublished).