# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-2252

_____

United States of America

*Plaintiff - Appellee*

v.

Alexander Faulkner

*Defendant - Appellant*

_____

No. 15-2286

_____

United States of America

*Plaintiff - Appellee*

v.

Alexander Faulkner

*Defendant - Appellant*

_____

Appeals from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: March 16, 2016
Filed: June 27, 2016

_____

Before MURPHY, BEAM, and GRUENDER, Circuit Judges.

_____

BEAM, Circuit Judge.

Alexander Faulkner appeals the district court's[1] denial of his motion to suppress evidence, his conviction for being a felon in possession of firearms and ammunition, and his 280-month sentence under the Armed Career Criminal Act (ACCA). We affirm.

## I.    BACKGROUND

In September 2013, Minneapolis Police Department officers received a tip from a Confidential Reliable Informant (CRI), with whom they had previously worked successfully, that Faulkner was dealing heroin in the Twin Cities. The CRI personally informed the officers that Faulkner had been traveling to and from Chicago to obtain heroin and then distribute it in Minneapolis. The CRI gave the officers two known addresses frequented by Faulkner–one on Hamline Avenue in St. Paul, and one on James Avenue in North Minneapolis–and a description of two of Faulkner's vehicles. Officers were able to independently verify that the James Avenue address was listed on Faulkner's driver's license; that he owned the two vehicles described by the CRI; and that the vehicles were registered to the Hamline Avenue address. Officers also conducted independent surveillance and observed Faulkner driving the vehicles at both residential locations and at other various points in Minneapolis. Accordingly, based upon this information and subsequent corroboration, the officers applied for, and received, a warrant to place GPS tracking devices on either or both of Faulkner's two vehicles. The warrant and resulting order specified that the device could be placed on either of Faulkner's vehicles located in

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

Hennepin County (Minneapolis), but the officers ultimately placed the device on one of the vehicles (a Chevy Avalanche) while it was in Ramsey County, in the City of St. Paul. The GPS on the Avalanche verified that on Wednesday, October 16, 2013, Faulkner indeed traveled to Chicago, as the CRI predicted. Within four hours' time, the Avalanche returned to the Twin Cities area to Faulkner's Hamline Avenue address. The next morning, the vehicle made several stops around the two cities, and ended up at the James Avenue address. The Avalanche made a substantially similar route to Chicago the next week, but this time officers stopped the car when it returned to Minnesota in the early morning hours of October 22 and arrested Faulkner. A search of his person and vehicle produced a small baggie of marijuana. Officers also seized a set of keys from the vehicle. Faulkner was ultimately released from custody after this initial arrest.

On October 21, Officers obtained search warrants for the Avalanche and the two residential addresses supplied by the CRI. When officers arrested Faulkner in his vehicle early on October 22, the residential search warrants were executed the same day.[2] Officers found heroin, firearms, and ammunition in Faulkner's locked bedroom at the Hamline Avenue address. Officers later applied for and obtained a second warrant to search the Hamline Avenue address, primarily to determine whether the keys seized from Faulkner's vehicle fit into the locks at the Hamline Avenue address (an apartment building). The keys fit the lock to the main apartment building and also the door to the bedroom where the heroin, firearms, and ammunition were found.

Following Faulkner's indictment, the district court issued a warrant for Faulkner's arrest. Officers executed this arrest warrant and Faulkner was arrested at 8:30 a.m. at a residence on Irving Avenue in Minneapolis on January 14, 2014. During that arrest, officers observed several loose rounds of ammunition in the room where Faulkner had been sleeping. Faulkner was a convicted felon and on supervised release at the time, having been convicted in 1996 in federal court for a narcotics-

---

[2]The search warrant on the Avalanche was executed on October 24.

distribution conspiracy and money laundering. Officers obtained a search warrant to search the residence at the Irving address following Faulkner's arrest.

Faulkner was indicted on two counts of being a felon in possession of firearms and ammunition as an Armed Career Criminal, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1), and with one count of possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Faulkner moved to suppress evidence found during the searches of the residences and vehicle, arguing there was no probable cause to support the various warrants, including the tracking order for the GPS unit, and also seeking disclosure of the identity of the CRI. The magistrate judge[3] held a two-day evidentiary hearing and later issued a report and recommendation denying the motion to suppress, finding ample probable cause to support the warrants and tracking order. The district court adopted the magistrate judge's report and recommendation. The district court also denied Faulkner's motion to compel disclosure of the CRI's identity, finding that the CRI was a "mere tipster" and his or her identity was not subject to disclosure. Faulkner proceeded to trial, where he was found guilty by a jury of the felon-in-possession counts. The jury could not reach a unanimous verdict on the heroin count. Because Faulkner had two previous serious drug offenses and a violent felony (burglary), Faulkner was sentenced under the ACCA to 280 months in prison. On appeal, Faulkner repeats his arguments from the motion to suppress hearing about the probable cause supporting the various warrants and the identity of the informant, and further challenges his qualifications to be sentenced as an Armed Career Criminal.

---

[3]The Honorable Tony N. Leung, Unites States Magistrate Judge for the District of Minnesota.

## II.  DISCUSSION

### A.  Motion to Suppress

In reviewing the district court's denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo. United States v. Lemon, 590 F.3d 612, 614 (8th Cir. 2010).  Issuance of a search warrant must be supported by probable cause,  which depends on whether, under the totality of the circumstances, there is a fair probability evidence of a crime will be found in a particular place.  United States v. Rodriguez, 711 F.3d 928, 936 (8th Cir. 2013).  "As a reviewing court, we pay 'great deference' to the probable cause determinations of the issuing judge or magistrate, and our inquiry is limited to discerning whether the issuing judge had a substantial basis for concluding that probable cause existed."  United States v. Lucca, 377 F.3d 927, 933 (8th Cir. 2004) (quoting Illinois v. Gates, 462 U.S. 213, 236 (1983)).

### 1.  GPS Tracking Device

Faulkner argues that all evidence from the GPS warrant should have been suppressed because (1) probable cause was lacking based upon the contents of the affidavit, (2) execution of the warrant outside the geographical limitations set forth in the warrant transformed the installation of the GPS tracking device into a warrantless search, and (3) installation of the device outside of Hennepin County violated state law.  Placement of a GPS tracking device on a vehicle is a "search" within the meaning of the Fourth Amendment, requiring probable cause and a warrant.  United States v. Jones, 132 S. Ct. 945, 949 (2012).

With regard to probable cause, Faulkner asserts that the affidavit was too "bare bones" to support issuance of the warrant because it contained little information about the informant and that the officers only corroborated innocent details regarding car ownership and home addresses.  The government argues the information from the

CRI along with the corroborated details was sufficient to support a probable cause finding. When an affidavit in support of a search warrant is based upon information from an informant, the informant's "reliability, veracity, and basis of knowledge are relevant considerations–but not independent, essential elements–in finding probable cause." United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986). The key inquiry in such cases is whether the information is reliable. United States v. Keys, 721 F.3d 512, 518 (8th Cir. 2013). Such reliability can be established through independent corroboration or the informant's track record of providing trustworthy information. United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993).

Giving the magistrate judge's determination the required deference, we find that although a close call, there was sufficient information to support issuance of the warrant for a GPS tracking device. Ideally the affidavit would have provided more details about the informant than the fact that he or she was reliable–i.e., that this person had successfully provided information leading to the discovery of evidence in the past. The officer testified about the informant's track record at the suppression hearing, but unfortunately did not include this information in the affidavit. However, we can infer by the designation of the informant as "reliable" that he or she had provided such information in the past. Additionally bolstering our conclusion is the fact that the CRI provided information to the officer in person, see United States v. Gabrio, 295 F.3d 880, 883 (8th Cir. 2002) (noting that in-person tips allow the affiant to assess informant's veracity), and importantly, that the officer was able to independently corroborate the details about ownership of the two cars and Faulkner's presence at the two residences. The corroborated information established that the CRI was providing accurate information about verifiable details, and the fact that those corroborated details were not about criminal activity does not subtract from the probable cause analysis. See United States v. Ketzeback, 358 F.3d 987, 992 (8th Cir. 2004) ("[I]ndependent corroboration of even innocuous facts makes it more likely an informant is telling the truth about incriminating ones, and corroboration of innocent behavior can provide the basis for establishing probable cause."). Under the totality

-6-

of the circumstances, we agree with the magistrate judge's determination that probable cause existed to support the GPS tracking warrant.

Faulkner next argues that installation of the GPS tracking device in an area beyond the geographical limits set forth in the warrant transformed the installation into a warrantless search under Jones, 132 S. Ct. 945. In Jones, during the course of a narcotics investigation, law enforcement obtained a warrant authorizing the installation of a GPS tracking device on Jones's car, within the District of Columbia, and within ten days of the warrant's issuance. Despite those two conditions, law enforcement installed the tracking device on Jones's car on the eleventh day after issuance, and in the state of Maryland. The District of Columbia Circuit reversed Jones's conviction, and the Supreme Court affirmed, holding that attaching a GPS tracking device to the underside of an automobile is a Fourth Amendment search. Id. at 949. In doing so, the Supreme Court did not analyze the validity of the underlying warrant because the government conceded that no valid warrant existed to justify the placement of the GPS tracking device, and instead confined its argument to the idea that no warrant was required. Id. at 948 n.1. Because probable cause, or not, was a conceded issue, and because Jones simply stands for the proposition that placement of a GPS device on an automobile requires a warrant, its application is of limited value for Faulkner.

Here, the warrant authorizing installation of the GPS tracking device was approved by a neutral magistrate in Hennepin County, Minnesota. The installation authorized by the warrant was executed within the specified time frame. The warrant application particularly described Faulkner's Avalanche by year, make, model, color, license plate, and VIN number. The CRI gave the officers credible tips that Faulkner was dealing heroin. The technical deficiency that the warrant specified a certain county for placement of the GPS device when it was actually placed in a neighboring county might be a violation of state law, but it is not a Fourth Amendment violation under these circumstances. United States v. Freeman, 897 F.2d 346, 350 (8th Cir. 1990) (holding no Fourth Amendment violation for technical violation in execution

of the warrant because it did not implicate probable cause or the description with particularity of the place to be searched, and, the violation was not deliberate); United States v. Bach, 310 F.3d 1063, 1066 (8th Cir. 2002) (state law violations were not a basis for suppression without a Fourth Amendment violation). Jones does not stand for a contrary proposition. Here the warrant was supported by probable cause as determined by a neutral magistrate, and particularly described the place to be searched. Bach, 310 F.3d at 1066. The officers testified at trial and the suppression hearing that placing the device in Ramsey County was a mistake, but their primary goal was simply to place the tracking device on a mobile target wherever they could find it. The district court found this testimony credible. And, as the district court noted with regard to state law, a Minnesota state court order is "enforceable throughout the state." State v. Loveless, 425 N.W.2d 602, 604 (Minn. Ct. App. 1988). Thus, Faulkner's arguments about the geographical location of the vehicle or any possible state law violations are without merit.

## 2.     Residential and Vehicle Search Warrants

Faulkner argues there was insufficient probable cause for issuance of the two search warrants for the Hamline Avenue and Irving Avenue addresses, and for a search of the Avalanche. The affidavit supporting the first search warrant for the Hamline Address contained the following information: law enforcement received a tip from a CRI that a black male was trafficking heroin from Chicago to North Minneapolis; the CRI had worked with law enforcement before and his tips had proved true and correct on numerous occasions;[4] the CRI had direct personal knowledge of the male and his illegal narcotics trafficking; the CRI identified Faulkner by name and provided a picture of him; the CRI stated that Faulkner makes trips to Chicago every one to three weeks to pick up at least 100 grams of heroin; the CRI stated that one of the vehicles Faulkner would drive was his orange Chevrolet

---

[4]The affidavits for the residential warrants contained more information about the CRI and his or her history giving information to law enforcement.

Avalanche; Minnesota Department of Vehicle Services records revealed that Faulkner owned an orange Chevrolet Avalanche and provided the Hamline Address as his own address on his vehicle registration for the Avalanche; and the GPS tracking information about Faulkner's activity in Chicago and Minnesota in the current and previous week was provided. The affidavit for the Avalanche is nearly identical, except that it provided information about the James Avenue address.[5]

Both of these affidavits established that there was a reasonable probability that a search of the premises and vehicle would lead to the discovery of evidence. United States v. Wallace, 550 F.3d 729, 733 (8th Cir. 2008) ("[O]nly a *probability* of criminal conduct need be shown in the affidavit."). At the time the residence and vehicle warrants were applied for, the CRI's information about Faulkner's whereabouts and activities had been further corroborated. And, Faulkner's arguments that the information was stale are without merit. The affidavits alleged Faulkner was involved in ongoing drug-dealing activity, and the GPS tracking evidence of his activities in Chicago and in the Twin Cities supported this allegation. Both affidavits were offered to the magistrate on October 21, and the affidavits contained information that the vehicle was in Chicago at that very time, in addition to the fact that it had returned from another brief trip to Chicago only five days earlier. Faulkner also points to inconsistencies between the Hamline Avenue affidavit and the Avalanche affidavit. However, these affidavits were independent of each other and issued by different magistrates in different counties. More importantly, the only material difference between the information in both was that one affidavit identified the James Avenue address as Faulkner's residence, and the other identified the Hamline Avenue address as his residence. The record indicates that Faulkner spent time at both locations and that his vehicles were registered at one address, while his driver's license listed the other. In any event, this discrepancy has no bearing on whether

_____

[5]Faulkner's challenge to the second Hamline Avenue warrant and the Irving Avenue warrant turns on the legality of earlier warrants. Because we find that each of the earlier warrants was supported by probable cause, these arguments are without merit.

probable cause existed to support the issuance of the warrants. Finally, because we find there was probable cause based upon the affidavits to support issuance of the warrants, Faulkner's arguments about their anticipatory nature are without merit. The district court correctly found there was probable cause for issuance of the numerous warrants in this case.

## B.    CRI Disclosure

Faulkner challenges the district court's refusal to compel disclosure of the identity of the CRI, arguing that it violated his Sixth Amendment right to confront witnesses. A district court's refusal to compel disclosure of a confidential informant's identity is reviewed for an abuse of discretion. United States v. Hollis, 245 F.3d 671, 673 (8th Cir. 2001). The threshold issue in determining whether disclosure is required emerges from whether the informant is a material witness. Carpenter v. Lock, 257 F.3d 775, 779 (8th Cir. 2001). The defendant bears the burden of proving materiality. United States v. Gonzalez-Rodriguez, 239 F.3d 948, 951 (8th Cir. 2001). Here, the CRI provided valuable initial information for the officers to obtain warrants from which evidence was gathered, but after that, the CRI did not provide any evidence related to the charges in the instant case. The CRI did not testify at trial, nor did the CRI witness or participate in any of the charged offenses. Thus, the CRI is correctly considered a "mere tipster" and disclosure was not required. See United States v. Crenshaw, 359 F.3d 977, 1005 (8th Cir. 2004) (upholding refusal to disclose CI where the informant was "not a necessary witness to the facts").

## C.    Sentencing

Faulkner's final argument challenges his sentencing under the ACCA, arguing that two prior federal convictions in 1996 for conspiracy with intent to distribute cocaine and possession with intent to distribute cocaine, both of which arose from the same federal indictment, should only count as one conviction for ACCA purposes.

We review the district court's ACCA determinations de novo. United States v. Pate, 754 F.3d 550, 554 (8th Cir. 2014).

The district court found that Faulkner had four qualifying offenses: a 1982 burglary, a 1984 burglary, and the two drug offenses mentioned above. The government now concedes that the 1982 burglary does not qualify after the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015). Thus, both of the 1996 drug convictions must count in order for Faulkner to qualify under the ACCA. See 18 U.S.C. § 924(e)(1) (requiring three prior convictions for serious drug offense or violent felony). The government argues that even though the 1996 convictions were charged in the same indictment, it is clear that the conspiracy and possession-with-intent counts involved different conduct on different occasions. The conspiracy conviction involved trafficking cocaine and cocaine base between Rochester and Chicago, between October 1993 and February 1995. The possession-with-intent count originated from Faulkner's February 3, 1995, arrest in Minneapolis, A large amount of cocaine was seized at the place where Faulkner was arrested in Minneapolis.[6]

---

[6]These convictions occurred in the District of Minnesota, and in fact, Faulkner was on supervised release from them at the time he committed the instant offense. We can examine the circumstances of these prior offenses instead of just the fact of conviction, as we are not restricted under Taylor v. United States, 495 U.S. 575 (1990), or Shepard v. United States, 544 U.S. 13 (2005) as to what we can view to determine whether these are separate offenses. See United States v. Melbie, 751 F.3d 586, 588 n.4 (8th Cir. 2014) (noting that neither party objected to looking at the underlying federal case materials to determine if two prior drug convictions were the same offense or separate, and that in any event, we reviewed the case materials not to determine whether the offense was a serious drug offense, but to "solely to address the question of separateness"). The current presentence investigation report (PSR) and the PSR from the 1996 convictions are in the appellate record and provide the details upon which we rely to decide the "separate" issue.

The two offenses must have been separate criminal episodes in order to qualify as separate offenses under the ACCA. United States v. Melbie, 751 F.3d 586, 589 (8th Cir. 2014). In Melbie, we found that a federal conspiracy conviction and a state possession-with-intent conviction (that actually occurred during the conspiracy) were separate convictions for purposes of the ACCA. Id. at 589-90. Also in Melbie, we cited with approval United States v. Johnston, 220 F.3d 857, 860-62 (8th Cir. 2000), wherein convictions for a (1) drug conspiracy, and (2) a possession count that occurred during the conspiracy, were both counted for purposes of triggering the mandatory life sentence in 21 U.S.C. § 841(b)(1)(A).

Faulkner cites United States v. Willoughby, 653 F.3d 738 (8th Cir. 2011), in support of his argument that both prior drug convictions should not count as predicate ACCA offenses. In Willoughby, we held that when two drug convictions were "committed, in essence, simultaneously" they would not count separately for purposes of the ACCA. Id. at 742, 745. The convictions in Willoughby were for two drug sales of marijuana, when an undercover officer and a CI drove together to the defendant's house and both purchased marijuana from the defendant at the same time, in the same location. Under these circumstances, we found that the prior convictions were part of one continuous course of conduct, rather than two separate offenses. Id. at 745. Three important factors to consider in making the determination of whether two offenses are separate: (1) the time lapse between offenses; (2) the physical distance between the occurrence of the offenses; and (3) an overall substantive continuity. Id. at 743.

In Melbie, we distinguished the factual scenario that occurred in Willoughby (a simultaneous drug sale to a CI and an undercover officer) and the conspiracy and possession-with-intent crimes that occurred in Melbie's case, stating, "Willoughby . . . did not involve an underlying conspiracy conviction and a related conviction as the two allegedly qualifying predicate convictions." 751 F.3d at 589. We further noted that the "ongoing nature and often extended time frames involved with conspiracy offenses" make the "time lapse" factor from Willoughby a "somewhat awkward fit." Id. Ultimately we found that when the defendant has an "underlying

conspiracy conviction that overlaps with a separate conviction for conduct that occurred as a punctuated event within that conspiracy," the offenses are separate for ACCA purposes. Id. at 589-90.

Like Melbie, Faulkner's case involves a conspiracy conviction and a related possession-with-intent-to-distribute count. Unlike Melbie, Faulkner's two counts were both charged in the same federal indictment. However, we think this is a distinction without a difference, and hold that because Faulkner's situation is nearly indistinguishable from Melbie and Johnston, and is factually distinguishable from Willoughby, the district court correctly found that the prior two drug convictions were separate ACCA predicates.

## III.  CONCLUSION

We affirm the district court.[7]

_____

_____

[7]As previously noted, Faulkner was on federal supervised release when he committed the instant offense. In addition to adjudicating guilt in the current case, the district court also found that Faulkner was in violation of three conditions of his supervised release–the prohibition against committing other crimes, against possessing a firearm, and leaving the judicial district without the permission of his probation officer. He was sentenced to 51 months for these violations, to be served concurrently with the 280-month sentence imposed in the underlying appeal. Case number 15-2286 is apparently Faulkner's appeal of the revocation of supervised release or his revocation sentence; however, we do not find any briefing on the matter, and, in light of our disposition of the merits in case number 15-2252, we find any challenge to the revocation of Faulkner's supervised release to be without merit.

-13-