# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A16-0618

State of Minnesota,
Appellant,

vs.

Joshua Dwight Liebl,
Respondent.

**Filed October 17, 2016**
**Affirmed**
**Smith, John, Judge**[*]

Lac qui Parle County District Court
File No. 37-CR-15-22

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Richard G. Stulz, Lac qui Parle County Attorney, Fiona B. Ruthven, Special Assistant County Attorney, Madison, Minnesota (for appellant)

William G. Peterson, Peterson Law Office, LLC, Bloomington, Minnesota (for respondent)

Teresa Nelson, Legal Director, St. Paul, Minnesota (for amicus curiae American Civil Liberties Union of Minnesota)

Considered and decided by Halbrooks, Presiding Judge; Johnson, Judge; and Smith, John, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## SYLLABUS

Absent application of a specific exception to the warrant requirement, law enforcement's warrantless installation and monitoring of a global positioning system mobile tracking device on a target's vehicle is an unreasonable search requiring suppression of the resulting evidence.

## OPINION

**SMITH, JOHN**, Judge

We affirm the district court's order suppressing evidence and dismissing criminal charges against respondent, because law enforcement's installation and monitoring of a global positioning system mobile tracking device on respondent's vehicle was an unreasonable search requiring suppression of the resulting evidence on which evidence the charges were based.

## FACTS

On September 24, 2014, Minnesota Department of Natural Resources Conservation Officer Ed Picht submitted to the issuing court a signed and sworn application requesting judicial authorization, pursuant to Minn. Stat. § 626A.37 (2014), to covertly install and monitor a global positioning system (GPS) mobile tracking device on a truck owned by respondent Joshua Dwight Liebl.[1] The application identified Liebl as the person to be

---

[1] That statute provides: "Upon an application made under section 626A.36, the court may enter an ex parte order authorizing the installation and use of a . . . mobile tracking device . . . if the court finds on the basis of the information submitted by the applicant that there is reason to believe that the information likely to be obtained by the installation and use is relevant to an ongoing criminal investigation." Minn. Stat. § 626A.37, subd. 1.

tracked with the GPS device and stated that GPS tracking was for the purpose of "collect[ing] information for the investigation of the criminal offenses of: Taking big game without a license, trespassing, the unlawful use of artificial lights to take big game, i.e., 'shining,' and transporting illegally taken big game." The application also recited the "facts and circumstances" that led Officer Picht to suspect Liebl of these criminal violations of Minnesota's game and fish laws (hunting crimes), including Officer Picht's receipt of multiple citizen reports that implicated Liebl in hunting crimes; Officer Picht's observation of physical evidence, such as blood, deer hair, deer antlers, drag marks, and tire tracks, that partially corroborated the citizen reports; and Officer Picht's knowledge that Liebl's Minnesota hunting privileges had been revoked due to an out-of-state criminal charge of "shining deer." Finally, the application relayed Officer Picht's belief that using GPS to "track[] the movements of [Liebl's truck] w[ould] facilitate the investigation of [Liebl's suspected hunting crimes] and that the information likely to be obtained by monitoring the [GPS] device [would be] relevant to the on-going criminal investigation." The same day, the court issued the requested order (tracking order), which complied with the relevant statutory mandates, under Minn. Stat. § 626A.37, subds. 2–4, as to contents, time period and extensions, and nondisclosure of such orders.

About two weeks later, in the early morning hours of October 8, 2014, Conservation Officer Jeffery Denz reviewed the tracking order and covertly installed a GPS device on Liebl's truck while it was parked in the driveway of Liebl's home. From that date until October 21, Officer Denz used the GPS device to track the truck's movements "on a daily basis" and "advised [Officer] Picht of any suspicious activity to include times and locations

3

when the [truck] was operating after dark and would slow down and stop on gravel roads not related to an intersection." Officer Picht used this information to gather evidence of Liebl's suspected hunting crimes. On October 21, Officer Picht applied for, secured, and executed search warrants for Liebl's home and truck; the warrant applications relied in part on Officer Picht's recitation of evidence resulting from the GPS tracking of Liebl's truck. The searches revealed evidence, including 2 deer carcasses and more than 20 sets of deer antlers, that further implicated Liebl in hunting crimes.

Liebl was arrested and his truck was seized for forfeiture. Appellant State of Minnesota subsequently charged Liebl with transporting illegal big game, taking/possessing big game out of season, hunting big game while under revocation, transporting wild animals, using artificial lights to locate animals, hunting big game between evening and morning, hunting deer without a license, two counts of failing to tag big game (possessing/transporting game in state without tag), two counts of failing to tag big game (removing game from site of kill without tag), and two counts of failing to register big game.

Liebl moved to suppress the state's evidence and to dismiss the charges against him, arguing that the evidence resulting from conservation officers' GPS tracking of his truck must be suppressed because the GPS tracking was an unreasonable search under both the U.S. and Minnesota Constitutions. Liebl also argued that Minn. Stat. § 626A.42 (2014) provided an independent basis for suppression of the evidence resulting from the GPS tracking. In opposition, the state denied the applicability of Minn. Stat. § 626A.42 on the facts of this case; argued that the GPS tracking was a reasonable search because it was

conducted in compliance with Minn. Stat. §§ 626A.35–.39 (2014); and alternatively argued that, even if the GPS tracking was an unreasonable search, the resulting evidence nonetheless was admissible under a good-faith exception to the exclusionary rule. After hearing argument, the district court issued an order suppressing all evidence and dismissing all charges against Liebl, rejecting Liebl's section-626A.42 argument but concluding that the officers' GPS tracking of Liebl's truck violated his rights under U.S. Const. amend. IV and that no good-faith exception applied to permit the admission of evidence resulting from the violation.

The state appeals.

## ISSUE

Was conservation officers' GPS tracking of Liebl's truck an unreasonable search requiring suppression of the resulting evidence?

## ANALYSIS

### 1. Unreasonable search

Both the U.S. and Minnesota Constitutions protect "[t]he right of the people to be secure in their persons, houses, papers, and effects" by forbidding "unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. "Under the Fourth Amendment to the United States Constitution and Article I, § 10 of the Minnesota Constitution, warrantless searches are presumptively unreasonable unless one of a few specifically established and well-delineated exceptions applies." *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011) (quotations omitted); *see also Riley v. California*, 134 S. Ct. 2473, 2482 (2014) ("In the absence of a warrant, a search is reasonable only if it falls

5

within a specific exception to the warrant requirement."). Whether a state action was a search, and whether a search was reasonable, are legal questions subject to de novo review. *State v. Eichers*, 853 N.W.2d 114, 124 (Minn. 2014).

"[T]he Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search'" within the meaning of U.S. Const. amend. IV. *United States v. Jones*, 132 S. Ct. 945, 949 (2012) (footnote omitted). It follows, then, that conservation officers' GPS tracking of Liebl's truck was an unreasonable search under the U.S. Constitution unless (1) the tracking order was legally equivalent to a search warrant, or (2) a specific exception to the warrant requirement applies.[2] *Cf. United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016) (stating that "[p]lacement of a GPS tracking device on a vehicle is a 'search' within the meaning of the Fourth Amendment, requiring probable cause and a warrant" (citing *Jones*, 132 S. Ct. at 949)).

The state argues that as a "pre-search judicial authorization of [GPS tracking,] made upon a sworn statement that, in fact, [was sufficient to] establish[] probable cause," the

---

[2] We do not suggest that Minn. Const. art. I, § 10, does not provide protection against GPS tracking that is at least equivalent to the protection provided by U.S. Const. amend. IV. *See State v. McBride*, 666 N.W.2d 351, 361 (Minn. 2003) ("While [an appellate court] may interpret the Minnesota Constitution to provide more protection than the U.S. Constitution, it may not afford less."). But the district court did not address the Minnesota Constitution in its order suppressing the evidence and dismissing the charges against Liebl, instead limiting its analysis to the U.S. Constitution. We similarly confine our own analysis here. *Cf. State v. Sorenson*, 441 N.W.2d 455, 457 (Minn. 1989) (declining to consider search-and-seizure issue under Minn. Const. art. I, § 10, and limiting analysis to U.S. Const. amend. IV, reasoning that "the question of [the Minnesota Constitution's] applicability was neither adequately briefed nor litigated").

tracking order was legally equivalent to a search warrant. We reject the state's legal-equivalency argument because such a holding would be contrary to the U.S. Constitution's requirement that "a warrant may issue only upon a finding of probable cause." *See United States v. Ventresca*, 380 U.S. 102, 107, 85 S. Ct. 741, 745 (1965) (quotation marks omitted). Here, there was no finding of probable cause at the time the tracking order was issued.[3]

Persuasive authority illustrates this point in the context of GPS tracking. In *Keeylen v. State*, an Indiana appellate court acknowledged that "the police asked for, and received, repeated authorizations from the trial court permitting the police to install and monitor GPS devices on [the target]'s vehicles" and stated that "it is not dispositive that the trial court's authorizations were not labeled 'warrants.'" 14 N.E.3d 865, 875 (Ind. Ct. App. 2014). Yet the appellate court qualified that statement, declaring that "[t]he label, nonetheless, is significant." *Id.* (quotation omitted). The court explained:

> The defining features of a judicial search warrant are that: (a) it must be issued by a judicial officer; (b) the judicial officer must find that there is probable cause to believe that evidence of contraband is present in the place to be searched; (c) the probable cause finding must be supported by the information contained in the oath or affidavit; and (d) the warrant must describe with particularity the places to be searched and the things to be seized.

---

[3] We note that the state did not argue at the district court level that a warrant exception applies to conservation officers' GPS tracking of Liebl's truck; it thereby forfeited any such argument on appeal. *See State v. Gauster*, 752 N.W.2d 496, 508 (Minn. 2008) (concluding that state forfeited warrant-exception argument by failing to raise it below, reasoning that "[appellate courts] generally will not consider arguments raised for the first time on appeal").

. . . In a typical case, where a putative warrant is labeled a "warrant" and explicitly purports to issue under the Fourth Amendment's Warrant Clause, the omission of the term "probable cause" from the face of the warrant would not cast the slightest doubt on the conclusion that the warrant necessarily issued upon a judicial finding of probable cause. The reason, simply, is that a warrant, which is labeled a "warrant" and that purports to issue under the Fourth Amendment, may issue only upon a judicial finding of probable cause. The Fourth Amendment requires no more than this implied finding.

In a case where a "warrant" is not sought, however, things are quite different. The State argues that there is no procedure for authorizing a search based on anything less than a showing of probable cause. But it is also true that, [from 2009 to 2011, when] the trial court issued the authorizations, it was *not clear* that a warrant supported by probable cause was required before the installation and use of a GPS tracking device. Indeed, it is telling that the officers did not seek a "warrant." Their failure to do so suggests that the officers, by merely seeking an order of authorization, sought something less than a warrant, and, as is easily inferred, on less than probable cause.

*Id.* at 868–70, 875–76 (quotations and citations omitted). The appellate court accordingly rejected the state's argument that officers "substantially complied with th[e warrant] requirement by seeking repeated authorizations of the use of the GPS devices from the trial court," and it concluded that "the warrantless installation of the GPS devices and monitoring of [the target]'s vehicles was improper." *Id.* at 875–76, 879.

In our view, *Keeylen*'s reasoning is even more compelling in this case, where statutes expressly authorized the issuance of a tracking order in the absence of a probable-cause finding by the issuing court. *See* Minn. Stat. § 626A.37, subd. 1 (providing for issuance of tracking order on finding "that there is reason to believe that the information

likely to be obtained by the installation and use is relevant to an ongoing criminal investigation"); *cf. State v. Fakler*, 503 N.W.2d 783, 786, 789 (Minn. 1993) (rejecting this court's conclusion that Minn. Stat. § 626A.37 requires issuing court to have "some articulable reason to believe that [surveillance pursuant to order] will produce probative incriminating evidence," and concluding that all that is required under statute is "precisely what it says").

Contrary to the state's assertions on appeal, the district court here did not conclude that the tracking order's "failure . . . to include an express finding of probable cause on its face was fatal" to the state's legal-equivalency argument. Rather, the district court found that "[n]o finding of probable cause was requested [of] or made" by the issuing court. The state does not allege, much less demonstrate, clear error in the district court's finding, which has ample support in the record. Because the tracking order was not based on a probable-cause finding by the issuing court, the tracking order was not a valid substitute for a search warrant. Consequently, we reject the state's legal-equivalency argument and conclude that conservation officers' warrantless GPS tracking of Liebl's truck was an unreasonable search that violated U.S. Const. amend. IV, irrespective of compliance with Minn. Stat. §§ 626A.35–.39 and existence of probable cause.

In support of its legal-equivalency argument, the state cites three nonprecedential cases: *United States v. Ponce*, No. 12-115(3), 2012 WL 6771394 (D. Minn. Dec. 10, 2012) (report and recommendation of magistrate judge), *adopted by United States v. Ponce*, No. 12-115(3), 2013 WL 64607 (D. Minn. Jan. 4, 2013); *State v. Harrington*, 990 N.E.2d 667 (Ohio Ct. App. 2013); and *Commonwealth v. Burgos*, 64 A.3d 641 (Pa. Super. Ct. 2013).

9

We consider the persuasive value of *Ponce* to be slight at best. The issue in *Ponce* was not whether a tracking order may be legally equivalent to a search warrant; rather, the magistrate judge considered only "whether probable cause existed" for issuance of a tracking order "on the four corners" of the tracking order and the "documents . . . including the application in support thereof." 2012 WL 6771394, at *8 & n.6.

While *Ponce* provides no guidance here, *Harrington* and *Burgos* are more directly on point. In *Harrington*, GPS tracking of the target's vehicle was authorized "via an entry signed by a . . . municipal court judge." 990 N.E.2d at 669. The entry was made after a police detective appeared before the judge and "set forth via affidavit his reasons, observations, and the facts leading to the request" for GPS tracking. *Id.* at 670. The appellate court concluded that "the trial court did not err in upholding the placement of the GPS device pursuant to the entry," reasoning in part that "[t]he municipal court judge reviewed an affidavit that set forth specific facts and observations that clearly met the probable cause standard." *Id.* at 671, 673.

The *Burgos* court similarly concluded that a tracking order that was issued pursuant to state statute and supported by probable cause "serve[d] as the functional equivalent of [a] traditional search warrant[]," despite the failure to comply with "traditional search warrant requirements" as to "the documents upon which the tracking of [the target]'s vehicle was grounded and the manner and timing of the execution" of the tracking order.[4]

---

[4] That statute provided: "An order authorizing the use of one or more mobile tracking devices may be issued . . . upon written application" that "provide[s] a statement setting forth all facts and circumstances which provide the applicant with a reasonable suspicion that criminal activity has been, is or will be in progress and that the use of a mobile tracking

64 A.3d at 646–47, 652–53 & n.17, 655–56 (quotation omitted). In reaching its conclusion, the court emphasized that "t[racking] orders are statutorily prescribed orders, approved and issued by the judiciary, which allow an investigating officer to conduct a search . . . upon a showing of the requisite level of suspicion." *Id.* at 655.

Contrary to the state's assertions in its briefs and at oral argument, the *Burgos* and *Harrington* opinions do not make clear that, in those cases, the judicial authorizations of GPS tracking were not based on contemporaneous probable-cause findings. In this case, by contrast, it is beyond dispute that the tracking order lacked an apparent probable-cause finding by the issuing court, although the district court subsequently found that Officer Picht's tracking-order application included "ample information to support a finding of probable cause." Here the state decries "overly formalistic readings of probable-cause requirements" as the exaltation of "form over substance" and points to caselaw suggesting that a warrant need not "recite an express finding of probable cause" to be valid. But the state misses the mark in its focus on the question whether a probable-cause finding must be express or implied.

---

device will yield information relevant to the investigation of the criminal activity." 18 Pa. Cons. Stat. § 5761(c) (2010). In response to *Jones*, the Pennsylvania legislature amended the statute to require probable cause rather than reasonable suspicion. *See* 18 Pa. Cons. Stat. § 5761(c) (2014) (providing that tracking-order application must "provide a statement setting forth all facts and circumstances which provide the applicant with probable cause that criminal activity has been, is or will be in progress and that the use of a mobile tracking device will yield information relevant to the investigation of the criminal activity"); *Burgos*, 64 A.3d at 653 n.15 (describing amendment and stating that "it is evident that the Legislature recognized the amendment was necessary for Section 5761 to comply with the *Jones* decision").

11

A judicial finding of probable cause is a precondition of a valid warrant. *See Ventresca*, 380 U.S. at 107, 85 S. Ct. at 745 (stating that "a warrant may issue only upon a finding of probable cause" (quotation marks omitted)); *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) ("For a search warrant to be valid, the warrant must be based upon a finding by a neutral and detached judicial officer that there is probable cause . . . ." (quotation omitted)). It is not enough for post-search analysis to reveal that an issuing court *could have found* probable cause for a search if the court *did not find* probable cause before issuing a search warrant. *See United States v. Leppert*, 408 F.3d 1039, 1041 (8th Cir. 2005) (stating that "warrants may issue only upon probable cause" and that "[b]efore issuing a warrant, a magistrate must determine based on the totality of the circumstances that probable cause exists" (quotation omitted)); *cf. Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) ("[I]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." (quotation omitted)). Thus, the relevant question here is whether the issuing court made a probable-cause finding at the time the tracking order was issued.  And, based on the undisputed record, the court did not make such a finding before signing the order.

## 2.    Suppression of the evidence

The state urges the application of a federal good-faith exception to the exclusionary rule, asserting that Officer Picht believed that warrantless GPS tracking of Liebl's truck was lawful and arguing that Officer Picht's belief was objectively reasonable in light of the tracking order issued pursuant to Minn. Stat. § 626A.37. In support of its argument, the

state cites *United States v. Taylor*, 979 F.Supp.2d 865 (S.D. Ind. 2013), *aff'd on other grounds*, 776 F.3d 513 (7th Cir. 2015), a case in which a federal district court declined to suppress evidence resulting from the warrantless GPS tracking of a vehicle based on police officers' objectively reasonable reliance on judicial authorization of the GPS tracking.

But in *Taylor*, the warrantless GPS tracking took place in September and October 2011, months prior to *Jones*'s release in January 2012. 979 F.Supp.2d at 867; *see Jones*, 132 S. Ct. at 945. Here, by contrast, the warrantless GPS tracking took place in October 2014, nearly three years after *Jones*'s release. And while the state is correct that *Jones* did not *directly* hold that a warrant is required for GPS tracking of a target's vehicle, "*Jones* fundamentally altered th[e pre-*Jones*] legal landscape," *United States v. Katzin*, 769 F.3d 163, 181 (3d Cir. 2014), by "settl[ing] that the attachment of a GPS device to a car, and subsequent use of that device to monitor the car's movements, is a 'search,' and that installing such a device without a warrant violates the Fourth Amendment," *United States v. Davis*, 750 F.3d 1186, 1189 (10th Cir. 2014) (citation omitted). *See also Faulkner*, 826 F.3d at 1145 (stating that "*Jones* . . . stands for the proposition that placement of a GPS device on an automobile requires a warrant"); *cf. Katzin*, 769 F.3d at 168, 170 ("caution[ing] that, after *Jones*, law enforcement should carefully consider that a warrant may be required when engaging in [GPS tracking of a vehicle]").

The state has not cited a single case that applies a federal good-faith exception to preserve the admissibility of evidence that, like the evidence at issue in this case, was obtained through post-*Jones* warrantless GPS tracking of a vehicle. Our own research has revealed no such case; instead, we have found cases suggesting that courts will not find

13

good faith in facts involving post-*Jones* warrantless GPS tracking. *See, e.g.*, *Taylor*, 776 F.3d at 517 (stating that "[the] good-faith exception [under *Davis v. United States*, 564 U.S. 229, 131 S. Ct. 2419 (2011)] . . . applies to pre-*Jones* use of GPS devices to track a suspect's car based on earlier Supreme Court precedent"); *United States v. Aguiar*, 737 F.3d 251, 255, 262 (2d Cir. 2013) ("[S]ufficient Supreme Court precedent existed [in January 2009 when] the GPS device was placed for the officers here to reasonably conclude a warrant was not necessary in these circumstances. Plainly, post-*Jones*, the landscape has changed, and law enforcement will need to change its approach accordingly."); *United States v. Sparks*, 711 F.3d 58, 62 (1st Cir. 2013) (stating that "the [warrantless GPS tracking] at issue in recent cases occurred pre-*Jones*, allowing the government to argue, and a number of courts to find, that the good-faith exception would apply even if the searches were unconstitutional").

We conclude that *Jones* forecloses the possibility of objectively reasonable, good-faith reliance on (1) judicial authorization of GPS tracking of a vehicle that is not based on a contemporaneous probable-cause finding, (2) statutes providing for judicial authorization of GPS tracking of a vehicle on less than probable cause, and (3) pre-*Jones* caselaw permitting warrantless GPS tracking of a vehicle. *Cf. Illinois v. Krull*, 480 U.S. 340, 355, 107 S. Ct. 1160, 1170 (1987) (stating that "a law enforcement officer [cannot] be said to have acted in good-faith reliance upon a statute if its provisions are such that a reasonable officer should have known that the statute was unconstitutional"); *United States v. Leon*, 468 U.S. 897, 922–23, 104 S. Ct. 3405, 3420 (1984) (stating that "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the

14

warrant he issues must be objectively reasonable" and that "it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued" (footnote omitted)); *United States v. Barraza-Maldonado*, 732 F.3d 865, 867 (8th Cir. 2013) ("For the good faith exception to apply, officers performing a particular investigatory action—such as GPS tracking—must strictly comply with binding appellate precedent governing the jurisdiction in which they are acting." (citing *Davis*, 564 U.S. at 240, 131 S. Ct. at 2428)).

The state also appears to argue that Officer Picht's belief in the lawfulness of warrantless GPS tracking of Liebl's truck was objectively reasonable because of the post-*Jones* "pattern and practice" regarding warrantless tracking devices in Minnesota—i.e., law enforcement's continued use of Minn. Stat. § 626A.36 to apply for judicial authorization of tracking orders, courts' continued issuance of tracking orders pursuant to Minn. Stat. § 626A.37, and the legislature's failure to amend or repeal those statutes. But as articulated by amicus curiae American Civil Liberties Union of Minnesota, "the failure of state actors to conform to a newly announced rule of constitutional criminal procedure should never insulate that conduct from constitutional scrutiny."

In sum, Officer Picht lacked an objectively reasonable basis for his belief that warrantless GPS tracking of Liebl's truck was constitutionally permissible after *Jones*. We believe that the exclusionary rule's deterrence rationale was served here, because law enforcement has a duty to stay abreast of changes in the law. We therefore decline the state's invitation to apply a federal good-faith exception in this case and conclude that

15

conservation officers' warrantless GPS tracking of Liebl's truck was an unreasonable search requiring suppression of the resulting evidence.

We note that Liebl argues that suppression of the evidence resulting from conservation officers' warrantless GPS tracking of his truck also was mandated by Minn. Stat. § 626A.42.[5] The district court rejected Liebl's interpretation of that statute, reasoning that "[it] was intended to apply to devices already in the possession of an individual." In light of our conclusion that the GPS tracking was an unreasonable search requiring suppression of the evidence, we do not reach the section-626A.42 issue here.

## D E C I S I O N

Because conservation officers' GPS tracking of Liebl's truck was a warrantless search to which no warrant-requirement exception applies and to which the good-faith exception does not apply, the district court did not err in suppressing the evidence that resulted from the GPS tracking and dismissing the criminal charges that were based on the suppressed evidence.

**Affirmed.**

---

[5] That statute provides: "[A] government entity may not obtain the location information of an electronic device without a tracking warrant. A warrant granting access to location information must be issued only if the government entity shows that there is probable cause the person who possesses an electronic device is committing, has committed, or is about to commit a crime." Minn. Stat. § 626A.42, subd. 2(a). Evidence obtained in violation of section 626A.42 is not admissible "in any criminal, civil, administrative, or other proceeding." *Id.*, subd. 6(a).