# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1507
_____

United States of America

*Plaintiff   Appellee*

v.

Joel Thomas Augard

*Defendant   Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: January 15, 2020
Filed: March 31, 2020

_____

Before COLLOTON, SHEPHERD, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Joel Thomas Augard pled guilty to two counts of production of child pornography in violation of 18 U.S.C. §§ 2251(a) and (e) and one count of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). Augard moved to suppress evidence uncovered when police searched the home he shared

with his parents.  The district court[1] denied Augard's motion without a hearing, finding the warrant lacked probable cause but fell within the good-faith exception. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. Background

In 2005 or 2006, when G.P. was eleven or twelve years old, he met Augard, an adult, through a volleyball league.  Augard and G.P. shared an interest in video games and G.P. soon began visiting Augard at his home to play video games.  After five visits Augard's grooming of G.P. escalated to the showing of pornography. Eventually Augard began sexually abusing G.P., including one incident involving bondage.  Augard would use a point-and-shoot camera to film the abuse, transfer the resulting images and video to his computer, and play the videos for G.P. on subsequent visits.  The cycle of abuse continued for about a year and only ended when Augard was fired from his job, lost his house to foreclosure, and relocated to take a new job.

Augard's interest in G.P. waned but did not end after he moved.  When G.P. was fifteen years old, G.P. attended a sporting event at the University of Iowa where Augard was employed in the university's information technology department.  When Augard saw G.P. on a security camera, he sent G.P. a text message saying, "I see you."  In 2016, Augard sent G.P. a Facebook message asking why he had not been invited to G.P.'s wedding.

On April 13, 2018, G.P. reported the abuse and more recent contacts with Augard to Detective Lori Kelly of the Des Moines Police Department.  Detective Kelly detailed the allegations in a April 27, 2018, affidavit in support of an

---

[1]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

application for a search warrant for Augard's home. The warrant described the place to be searched as a home located at a specific address in Cherokee, Iowa ("the house"). Detective Kelly's affidavit stated that Iowa Department of Transportation ("DOT") records showed that in December 2017 Augard listed this address as his residence on his driver's license. DOT records also contained a registration for Augard's vehicle to the same address. The affidavit noted that surveillance established Augard's vehicle parked outside the house. Detective Kelly's affidavit also described how she independently corroborated portions of G.P.'s story by cross-referencing Augard's available employment history.

The house was searched pursuant to the warrant and officers found child pornography. Augard was charged with production and possession of child pornography. He moved to suppress the results of the search claiming that the warrant contained stale information and failed to establish a sufficient nexus between the evidence sought and the house. Augard argued the good-faith exception did not apply because: (1) stale information and lack of nexus made executing the affidavit unreasonable; and (2) Detective Kelly did not disclose in her affidavit that Augard had moved several times since 2005 or that the house in Cherokee, Iowa belonged to his parents. Augard requested a Franks hearing based on Detective Kelly's omission.

The district court denied Augard's motion to suppress without an evidentiary hearing, finding that although the warrant lacked probable cause, the search fell within the good-faith exception. The court also denied the request for a Franks hearing. Augard pled guilty and was sentenced to 480 months' imprisonment. Augard appeals the denial of his suppression motion, reasserting the arguments he presented to the district court.

## II. Discussion

We review the district court's findings of fact for clear error and the probable cause determination and application of the good-faith exception *de novo*. United States v. Keele, 589 F.3d 940, 943 (8th Cir. 2009). Here, we assume the warrant lacked probable cause. If a warrant lacks probable cause and the executing officer was objectively reasonable in relying on the warrant, the good-faith exception to the exclusionary rule applies and evidence should not be suppressed due to an absence of probable cause. United States v. Leon, 468 U.S. 897, 922–23 (1984). An officer's reliance is only unreasonable if: (1) the affidavit supporting the warrant contains knowing or reckless false statements misleading the judge; (2) the issuing judge wholly abandons its judicial role in issuing the warrant; (3) the affidavit is so lacking in indicia of probable cause that reliance is entirely unreasonable; or (4) the warrant is so facially deficient that no reasonable officer could consider it valid. United States v. Proell, 485 F.3d 427, 431 (8th Cir. 2007). The good-faith exception may apply based on information reasonably known to the executing officer but not included in the warrant. United States v. Jackson, 784 F.3d 1227, 1231 (8th Cir. 2015).

Augard broadly asserts that the officer's reliance was unreasonable because the issuing judge abandoned his judicial role, the warrant was facially deficient, and the warrant was so lacking in probable cause that no reasonable officer could consider it valid. He has failed to articulate any reasons for his first two assertions. Instead, Augard focused on the following alleged deficiencies: (1) the staleness of the information in the supporting affidavit; and (2) the lack of a nexus between evidence of illegal activity and the house.

While there is no bright-line test for determining staleness, we look to a variety of factors, including the nature of the criminal activity and the type of property subject to search. United States v. Huyck, 849 F.3d 432, 439 (8th Cir. 2017). If the

elapsed time between the criminal activity and warrant issuance in the case leaves the evidence too stale to support a finding of probable cause, the nature of the crime and evidence sought may still militate in favor of applying the good-faith exception. United States v. Rugh, 968 F.2d 750, 754 (8th Cir. 1992).

The criminal activity in this case is sexual abuse of a child and production of child pornography. The essence of these crimes involves the abuse of a trust and power relationship, which frequently delays reporting until the minor has obtained majority. G.P. eventually reported the abuse directly to Detective Kelly, who independently corroborated details of the allegation. The affidavit described Augard's extensive grooming of G.P., his repeated abuse of G.P. over a one year period, and his efforts to contact G.P. as recently as 2016. The affidavit also described Augard's prolonged unusual interest in G.P., his need to memorialize and revisit the sexual abuse by retaining and viewing videos, and his efforts to preserve the recordings on a computer for future viewing. Considering the specific nature of the crimes being investigated, the evidence supporting the warrant application was not so stale as to render the officer's reliance on the warrant entirely unreasonable.

The type of property subject to search included digital images and videos of child pornography, which are typically retained for long periods of time. Huyck, 849 F.3d at 439. Given Augard's particular interest and investment in recording the videos on one device, saving and transferring them to another, and revisiting them with G.P. on numerous occasions, the property subject to search in this case was reasonably likely to be retained and kept by Augard close at hand or near him. Like the nature of the crimes, the type of evidence sought establishes the warrant was not so stale that the officer's reliance was entirely unreasonable.

As to the nexus, law enforcement officers may make reasonable inferences in preparing affidavits in support of a warrant. United States v. Thompson, 210 F.3d 855, 860 (8th Cir. 2000). A judge may also draw reasonable inferences based on the

totality of the circumstances in deciding to issue the warrant. Id. The circumstances surrounding this case, including the prolonged grooming, repeated acts of sexual abuse, pornography production, transfer to a storage device, and repeated viewing that occurred regularly over the course of a year, permit a reasonable inference that images and videos Augard took and preserved at a prior residence would be located at his current residence. See United States v. Summage, 481 F.3d 1075, 1078 (8th Cir. 2007) (permitting reasonable inference that a defendant who produced pornography at a prior residence would retain evidence at his new residence). This information established a sufficient nexus connecting the evidence to the house.

We are unpersuaded by Augard's claim that the good-faith exception does not apply because Detective Kelly did not inform the issuing judge that the house was owned by his parents and that he had moved several times since 2005. The supporting affidavit notes that Augard had moved after the abuse. Detective Kelly confirmed Augard lived at the house through multiple sources, including DOT records and surveillance. Considering the likelihood of Augard's presence in the house and that he would retain images and videos memorializing his abuse of G.P. wherever he was living, actual ownership of the home is immaterial to a finding of probable cause. Omitting his parents' ownership of the house does not render the good-faith exception inapplicable.

Because the arguments advanced by Augard presented no contested issue of fact and his suppression motion was decided as a matter of law, the district court did not abuse its discretion by declining to hold an evidentiary hearing. United States v. Stevenson, 727 F.3d 826, 830 (8th Cir. 2013). Likewise, having found ownership of the house was immaterial to a probable cause determination and omission of the details regarding Augard's moves was not a misrepresentation, the district court did not abuse its discretion in declining to hold a Franks hearing. Franks v. Delaware, 438 U.S. 154, 155–56 (1978) (to be entitled to a hearing, the defendant must make a substantial showing that an affidavit includes a knowing or reckless

-6-

misrepresentation, and the alleged misrepresentation is necessary to the probable cause determination).

## III. Conclusion

For the foregoing reasons, we affirm.

_____