# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-2406
_____

United States of America

*Plaintiff - Appellee*

v.

Roy L. Norey

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Springfield
_____

Submitted: January 14, 2022
Filed: April 14, 2022
_____

Before BENTON, SHEPHERD, and STRAS, Circuit Judges.
_____

BENTON, Circuit Judge.

While executing a search warrant on Roy L. Norey's residence, law enforcement officers found a handgun and other contraband. Norey was charged with felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922 and 923. He filed a motion to suppress the evidence seized during the search,

which the district court[1] denied.  A jury later convicted him.  He appeals the denial of his motion.  Having jurisdiction under 28 U.S.C. § 1291, this Court affirms.

## I.

In 2018, a confidential informant told Springfield, Missouri, police that Norey was dealing heroin and marijuana there.  The informant stated that Norey was importing heroin from Chicago and selling it at 1042 West College Street, Springfield.  Surveilling the location, Detective Brad Nicholson saw Norey, as well as many vehicles, coming and going from it.  He eventually stopped two vehicles; one contained "two baggies of marijuana," and the other contained "a small amount of marijuana, a digital scale, and a large amount of counterfeit money."

On October 17, 2018, a woman called the police to report that people at an apartment at 230 East Montclair Street, Springfield, were selling guns and drugs.  She identified Roy Norey as one of the residents there.  She stated that he "carried drugs and a firearm sometimes."

After multiple people were shot during a party at the College Street address on December 23, 2018, Springfield police executed a search warrant on the address and "seized four firearms, suspected heroin, marijuana, and pills."

On January 2, 2019, Detective Nicholson surveilled Norey's apartment at "230 East Montclair [St.], Apartment 3B, Springfield."  He observed Norey leave the apartment and stopped Norey's vehicle.  During the stop, Detective Nicholson smelled "a strong odor of marijuana," "Norey admitted to recently smoking marijuana," and Detective Nicholson "seized a baggie of marijuana from" him.

---

[1]The Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri.

Based on this information, Detective Nicholson applied for a search warrant for Norey's Montclair Street apartment to seize evidence of drug distribution. In support, he submitted an affidavit, which stated:

- A confidential informant said that Norey was importing large amounts of heroin, and selling it and marijuana at the College Street address;

- This informant had proven a reliable source of information and been corroborated in past investigations;

- Surveillance showed many vehicles going to and from the College Street address;

- A search of one vehicle revealed "two baggies of marijuana." A search of another produced "a small amount of marijuana, a digital scale, and a large amount of counterfeit money";

- After a shooting at the College Street address, a police search there recovered four firearms, suspected heroin, and marijuana;

- Shortly after that search, Detective Nicholson began surveilling the Montclair Street address, where he saw Norey leave. He then conducted a traffic stop of his vehicle, during which he found a baggie of marijuana. Norey admitted to recently consuming marijuana; and

- Norey and Natasha Norey were listed as city-utility account holders for the Montclair Street address.

The affidavit did not reference the October 17, 2018, call.

On January 3, 2019, a state-court judge issued a warrant for the search. That same day, Springfield police, including Detective Nicholson, conducted a search of the Montclair Street address. They seized a handgun, ammunition, $16,000, digital scales, and baggies, among other items.

Norey was charged with felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922 and 923. He moved to suppress the evidence from the

Montclair Street search and sought a *Franks* hearing because the warrant application had incorrectly stated that Norey was listed on the utility bills for the Montclair Steet address—when he in fact was not. A magistrate judge held a suppression hearing. Detective Nicholson testified that, among other things, he surveilled the College Street and Montclair Street locations "numerous times" and often saw Norey going to and from both locations. He stated he accidentally typed in the wrong address when checking the Montclair Street city-utility records, but Norey being listed as an account holder for Montclair Street would not have surprised him because he often saw Norey going to and from the location. Detective Nicholson also testified that the written report for the October 17 call about Norey had "advised residents [at Montclair Street] are selling drugs and guns in Chicago," but the report's written description was inaccurate and "need[ed] to be corrected."

The magistrate judge issued a Report and Recommendation finding that the warrant lacked probable cause but the *Leon* good-faith exception applied, and that the application's incorrect statement about the utility bills was an unintentional mistake, not a deliberate or reckless falsehood. The district court eventually denied the motion to suppress, finding both that the warrant was valid and that the *Leon* exception applied. After trial, a jury convicted Norey.

He appeals the order denying his motion to suppress.[2]

---

[2]After this appeal was briefed, Norey sent a letter to the Clerk of Court, which this Court interprets as a pro se Motion to Appoint Appellate Counsel. He discusses various issues, but the only ones relevant to his appeal are that his current appellate attorney: (1) did not appeal the *Franks* hearing determination or other arguments raised in the original motion to suppress and rejected by the district court, (2) did not keep him as abreast of work on the appeal as he would have liked, and (3) did not file a reply brief. The merits arguments that Norey wanted to raise on appeal, including the *Franks* argument and other circumstances in which *Leon* does not apply, are unpersuasive and would not change the outcome of this Court's analysis. His attorney's opening brief thoroughly addressed the issue appealed and not filing a reply brief is common practice for appeals in this Circuit. This Court denies the Motion as moot.

## II.

For denial of a motion to suppress, this Court reviews the district court's factual findings for clear error and legal conclusions de novo. *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016). The determination of probable cause is reviewed de novo. *United States v. Augard*, 954 F.3d 1090, 1093 (8th Cir. 2020).

For the application of the good-faith exception from *United States v. Leon*, 468 U.S. 897 (1984), this Court "defer[s] to a finding of good faith unless clearly erroneous, but" reviews de novo "conclusions about the objective reasonableness of the officers' reliance." *United States v. Fiorito*, 640 F.3d 338, 344 (8th Cir. 2011).

"Under the *Leon* good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." *United States v. Mayweather*, 993 F.3d 1035, 1041 (8th Cir. 2021), *quoting United States v. Moya*, 690 F.3d 944, 948 (8th Cir. 2012). Thus, when the exception applies, evidence "seized pursuant to a warrant that lacked probable cause" is admissible at trial. *Fiorito*, 640 F.3d at 345.

"[T]his Court 'may consider the applicability of the good-faith exception to the exclusionary rule,'" without addressing whether probable cause exists. *United States v. Williams*, 976 F.3d 807, 809 (8th Cir. 2020), *quoting United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007). "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the issuing judge's authorization." *Id.*, *quoting Proell*, 485 F.3d at 430. To determine whether an officer had "an objectively reasonable belief in the existence of probable cause," this Court assesses "the totality of the circumstances, including information known to the officer but not presented to the issuing judge." *Fiorito*, 640 F.3d at 345 (quotations omitted); *see Herring v. United States*, 555 U.S. 135, 145 (2009) ("'[The] good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained

officer would have known that the search was illegal' in light of 'all of the circumstances.'" (quoting *Leon*, 468 U.S. at 922 n.23)).

*Leon* also "identified four circumstances in which an officer's reliance on a warrant is not in objective good faith." *Fiorito*, 640 F.3d at 345. One such circumstance occurs when "the affidavit in support of the warrant is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Williams*, 976 F.3d 807, *quoting Leon*, 468 U.S. at 923.

On appeal, Norey argues that the good-faith exception does not apply because the affidavit in support of the warrant was so lacking in "indicia of probable cause to search for evidence of drug trafficking" at Norey's apartment that official belief in the existence of probable cause was entirely unreasonable. Opening Br. at 27. Specifically, he argues that the affidavit and additional information known to Detective Nicholson "tended to show Mr. Norey resided at the Montclair address," *id.* at 27, but this is insufficient because the evidence did not show "evidence of drug trafficking found [at the College Street address] had any connection to" him, "there was no evidence that known drug dealers or their vehicles were surveilled at the Montclair address," and his possession of a small amount of marijuana when he was leaving his home does not suffice to establish probable cause for drug trafficking, *id.* at 28.

Norey is incorrect: Detective Nicholson had an objectively reasonable belief in the existence of probable cause, and the affidavit contained sufficient indicia of probable cause, so the good-faith exception applies. First, there is no evidence Detective Nicholson acted in bad faith, and the issuing judge found that the affidavit provided a substantial basis to find probable cause to search for evidence of drug dealing at the Montclair Street address. *See Leon*, 468 U.S. at 922 ("[A] warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." (quotations omitted)).

Second, the district court agreed with the issuing judge, despite the magistrate judge's conclusion that the affidavit did not provide probable cause. *See United States v. Simpkins*, 914 F.2d 1054, 1058 (8th Cir. 1990) ("When judges can look at the same affidavit and come to differing conclusions, a police officer's reliance on that affidavit must, therefore, be reasonable." (quoting *United States v. Martin*, 833 F.2d 752, 756 (8th Cir. 1987))).

Third, the information known to Detective Nicholson reinforces the objective reasonableness of his belief in probable cause. The confidential informant had said Norey was importing large quantities of heroin, and selling heroin from College Street address. Detective Nicholson saw Norey going to and from that address, where the informant said Norey distributed drugs. He knew firearms, suspected heroin, and marijuana had been seized during the search at the College Street address. He knew a woman had reported Norey was selling guns and drugs, and staying at the Montclair Street apartment. He also observed Norey frequently going to and from that apartment, and stopped him when he was leaving the apartment. Cumulatively, this information—known to Detective Nicholson—shows Norey engaged in a continuous course of drug dealing, and resided at the apartment. *See Fiorito*, 640 F.3d at 345 (stating the totality-of-the-circumstances analysis includes "information known to the officer but not presented to the issuing judge").

These facts establish that it was objectively reasonable for Detective Nicholson to rely on the warrant. Thus, the *Leon* good-faith exception applies.

Norey counters that there was not a sufficient nexus between his drug trafficking and this apartment. To be sure, without a nexus between a defendant's drug-dealing and the defendant's residence, evidence of the former does not provide probable cause for a warrant to search the latter. *See United States v. Moya*, 690 F.3d 944, 948 (8th Cir. 2012) ("[W]e have not adopted a per se rule . . . that probable cause to arrest a drug trafficker establishes an inference that . . . evidence of drug trafficking exists at the trafficker's residence." (quotations omitted)); *see also United States v. Carpenter*, 341 F.3d 666, 671 (8th Cir. 2003) (stating that "we do not

endorse . . . an inference [of probable cause] without a factual basis to form the nexus between the residence and the drugs").

However, the good-faith exception applies even if there is no direct nexus between a defendant's continuous course of drug trafficking and his residence because an officer and an issuing judge may "logically infer that a drug dealer would store contraband at his residence." *Mayweather*, 993 F.3d at 1041; *see Carpenter*, 341 F.3d at 671-72 (concluding it was not "entirely unreasonable" for officer to believe affidavit had adequate probable cause—despite lack of nexus between defendant's residence and suspected contraband—because "it is logical to infer that someone in possession of valuable contraband would store that contraband in a safe, accessible location such as his or her residence"). Because the evidence established Norey's continuous course of drug dealing and his residence at the Montclair Street address, Detective Nicholson and the issuing judge could have logically inferred that he "stored contraband at [that] residence," *Mayweather*, 993 F.3d at 1041. Thus, the affidavit was not so lacking in indicia of probable cause that official belief in its existence was "entirely unreasonable."

Finally, contrary to Norey's claims, the present affidavit is a far cry from the bare-bones affidavit found insufficient in *Aguilar v. Texas*, 378 U.S. 108 (1964). *See* Opening Br. at 26-27. *Compare Aguilar*, 387 U.S. at 109, 114-15 (rejecting bare-bones affidavit that claimed only a belief that drug-trafficking evidence would be found because "[a]ffiants have received reliable information from a credible person," and provided *no* basis on which the officers thought the informant credible or the information reliable), *with* Affidavit at 2-4, DCD 127 (detailing informant's reliability and statements about Norey dealing drugs at College Street; subsequent search of that address; and surveillance of Montclair Street address, including traffic stop of Norey).

In sum, the *Leon* good-faith exception applies. This Court need not address whether the affidavit provided a substantial basis to find probable cause that drug-trafficking evidence would be found at the Montclair Street address. *See Williams*,

976 F.3d at 809 (finding evidence admissible under *Leon* without "reviewing the existence of probable cause"); *United States v. Ross*, 487 F.3d 1120, 1122 (8th Cir. 2007) ("Assuming, without deciding, that the affidavit failed to provide a sufficient nexus between [defendant's] residence and the drug conspiracy at issue, the *Leon* good-faith exception saves the evidence from suppression under the facts of this case.").

\* \* \* \* \* \* \*

The district court's denial of Norey's suppression motion is affirmed. Norey's pro se Motion for Appointment of Counsel is denied as moot.

———————————————————