## United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-2930
_____

United States of America

*Plaintiff - Appellee*

v.

Mar'yo Doyuan Lindsey, a/k/a Maryo Doyuan Lindsey

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Eastern
_____

Submitted: April 14, 2022
Filed: August 5, 2022
_____

Before SHEPHERD, ERICKSON, and STRAS, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Appellant Mar'yo Doyuan Lindsey entered a conditional guilty plea to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2).

The district court[1] sentenced him to 70 months imprisonment followed by 3 years supervised release. Lindsey appeals, asserting that the district court erred in denying his motion to suppress evidence seized by law enforcement officers during the search of a vehicle in which Lindsey was a passenger, as well as evidence obtained under subsequently secured search warrants. Having jurisdiction under 28 U.S.C. § 1291, we affirm the judgment of the district court.

I.

On July 12, 2020, law enforcement officers on the Waterloo Police Department's Violent Crime Apprehension Team, including Officer Matt Woodward, viewed two live Snapchat videos posted on D.G.-B's account of D.G.-B. in possession of what appeared to be a 9mm handgun with an extended magazine and laser attachment. The officers recognized D.G.-B. and knew that he was a felon who could not lawfully possess a firearm. The officers were also aware that D.G.-B. did not have a valid driver's license. Officer Woodward, along with other officers, immediately began searching for D.G.-B. Officer Woodward drove an unmarked police vehicle with emergency lights on the rear view and side view mirrors. Officers traveled to the area of the 100 and 200 blocks of Virden Avenue in Waterloo, where D.G.-B.'s social media indicated that he would be found. Officers spotted a moving vehicle driven by D.G.-B. with Lindsey in the front passenger seat. The vehicle driven by D.G.-B. did not have a valid license plate or Iowa Department of Transportation paperwork visibly displayed. Officer Woodward attempted to fall in behind the vehicle driven by D.G.-B. in order to make a traffic stop, but another vehicle pulled into the line of traffic between Officer Woodward and D.G.-B. By the time Officer Woodward caught up with the vehicle driven by D.G.-B., D.G.-B. was parked at a fuel pump at a convenience store. Officer Woodward pulled into the

---

[1]The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa.

convenience store parking lot, parked in front of D.G.-B.'s vehicle, and activated his emergency lights. He could see both D.G.-B. and Lindsey. Lindsey looked like he "saw a ghost" and had "[a] very shocked look." Lindsey then made a series of furtive movements. He leaned "slightly forward," then "slightly back," and then "all the way forward and his arms [went] all the way down." He then leaned "right back up" while looking at Officer Woodward. From Officer Woodward's training and experience, he interpreted these movements as Lindsey pulling an object out of his pants pocket or waistband and then placing it at his feet.

At the time of the stop, officers, including Officer Woodward, were aware that on July 3, 2020, a vehicle in which Lindsey was a front seat passenger had been stopped for speeding by an Iowa State Patrol Trooper. As the trooper approached the passenger side of the vehicle, he detected the smell of marijuana emanating from the vehicle. He then observed the end of a baggie protruding from Lindsey's pocket. The ensuing search of the vehicle yielded an extended 9mm handgun magazine in the glove box. A description of this stop had been conveyed to the Waterloo Police Department. Officer Woodward also knew Lindsey from prior encounters and was aware that he was a felon with a history of firearm possession.

Officer Woodward exited his vehicle, drew his firearm, and ordered D.G.-B. and Lindsey to put their hands in the air, which they did. Lindsey then attempted to exit the vehicle, but Officer Woodward ordered him to stay inside. Officer Woodward questioned Lindsey about his "furtive" movements. After another officer secured D.G.-B., Officer Woodward ordered Lindsey to exit the vehicle. Officer Woodward searched the passenger compartment and found a Canik 9mm handgun with a laser attached and an extended capacity magazine on the floor beneath the passenger seat Lindsey had been sitting in. The handgun appeared to be the firearm displayed by D.G.-B. in the earlier Snapchat videos. Officers also found a cell phone in the passenger seat and seized a cell phone from Lindsey's person. Lindsey was arrested and transported to the Waterloo Police Department.

-3-

Officers obtained a search warrant for a sample of Lindsey's DNA. The Federal Bureau of Investigation subsequently matched Lindsey's DNA with DNA from the magazine seized on July 3rd and the DNA from the 9mm handgun found on July 12th in the vehicle in which Lindsey was a passenger. Officers also obtained a search warrant to search the cell phones that were seized on July 12th. The search of the cell phones revealed text messages in which Lindsey and another person discussed the handgun and which included a photograph of the weapon.

Lindsey filed a motion to suppress all evidence found in the vehicle on July 12th, as well as the evidence obtained by virtue of the execution of the search warrants, contending that the evidence must be excluded as fruit of the poisonous tree. The district court denied the motion in full, finding that, as a passenger, Lindsey lacked standing to challenge the search of the vehicle and, in the alternative, that officers possessed probable cause to search the vehicle. As to the search warrants, the district court concluded that they were supported by probable cause, and, in the alternative, that suppression was inappropriate under the Leon[2] "good faith" exception to the exclusionary rule.

II.

Lindsey first argues that the search of the vehicle violated his Fourth Amendment rights and, accordingly, the fruits of the search must be suppressed. See Wong Sun v. United States, 371 U.S. 471, 485 (1963) (explaining that, under the Fourth Amendment, evidence obtained from an unlawful search or seizure is excludable as "'fruit' of official illegality"). "We review the district court's legal conclusions [in denying a motion to suppress] de novo and its factual findings for clear error." United States v. Charles, 895 F.3d 560, 564 (8th Cir. 2018); see also United States v. Augard, 954 F.3d 1090, 1093 (8th Cir. 2020) (reviewing probable

---

[2]United States v. Leon, 468 U.S. 897 (1984).

cause finding de novo). "That is, we will affirm the district court's decision 'unless it misstates the law, is unsupported by substantial evidence, or, after reviewing the record, we are left with the definite and firm conviction that a mistake has been made.'" United States v. Smith, 990 F.3d 607, 611 (8th Cir. 2021) (citation omitted).

As a general matter, mere passengers, such as Lindsey, who have no ownership rights in a vehicle lack standing to challenge a search of the vehicle. United States v. Russell, 847 F.3d 616, 618 (8th Cir. 2017). However, Lindsey contends that he has standing to challenge the search because it was the direct result of his illegal seizure by officers. See Brendlin v. California, 551 U.S. 249, 257-59 (2007) (holding that when police make a traffic stop, a passenger in the vehicle, like the driver, is seized for Fourth Amendment purposes and may challenge the stop's constitutionality). Indeed, when a defendant "lack[s] a possessory or property interest in the motor vehicle that would enable him to directly challenge the search, he may still contest the lawfulness of his own detention and seek to suppress evidence as the fruit of his illegal detention." United States v. Green, 275 F.3d 694, 699 (8th Cir. 2001).

In this case, however, Officer Woodward had probable cause to detain the vehicle and Lindsey, a passenger, based upon traffic violations alone. "Any traffic violation, however minor, provides probable cause for a traffic stop." United States v. Wright, 512 F.3d 466, 471 (8th Cir. 2008) (citation omitted). "To extend a routine traffic stop, an officer needs reasonable suspicion of additional criminal activity." United States v. Callison, 2 F.4th 1128, 1132 (8th Cir. 2021). It is undisputed that the vehicle in which Lindsey was a passenger on July 12th bore no license plate or other state-issued registration documentation. Additionally, Officer Woodward was aware that D.G.-B. was not a legal driver. He also was aware that D.G.-B. and Lindsey were felons and that D.G.-B. had appeared on live Snapchat videos shortly before the incident handling what appeared to be a 9mm handgun with an extended magazine. Furthermore, Officer Woodward was aware of Lindsey's July 3rd stop by an Iowa State Patrol trooper during which the trooper found in the vehicle's glove box a

-5-

loaded extended handgun magazine for the handgun model that D.G.-B. possessed in the Snapchat videos. Finally, Officer Woodward observed Lindsey's furtive movements typical of someone removing an object from his pants pocket or waistband and depositing it at the individual's feet. Given these circumstances, it was reasonable for Officer Woodward to detain D.G.-B. and Lindsey and extend the stop based on reasonable suspicion of additional criminal activity. Accordingly, because officers had probable cause to make the traffic stop, order Lindsey out of the vehicle, and then extend the stop based upon reasonable suspicion that D.G.-B. and Lindsey were felons in possession of firearms, the district court properly denied Lindsey's motion to suppress as to the evidence found in the vehicle on July 12th.

Lindsey also contends that the affidavits in support of the search warrants for his DNA and the two cell phones did not allege facts sufficient to establish probable cause for the issuance of the warrants. "A supporting affidavit establishes probable cause to issue a search warrant if it 'sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched.'" United States v. Brackett, 846 F.3d 987, 992 (8th Cir. 2017) (citation omitted). The district court found the affidavits constitutionally adequate but alternatively concluded that suppression was inappropriate in any event because the officers acted in good faith in executing the search warrants. We affirm the district court based on this alternate reasoning.

"For the application of the good-faith exception from [Leon], this Court 'defer[s] to a finding of good faith unless clearly erroneous, but' reviews de novo 'conclusions about the objective reasonableness of the officers' reliance.'" United States v Norey, 31 F.4th 631, 635 (8th Cir. 2022) (alteration in original) (citations omitted). "Under the Leon good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." United States v. Mayweather, 993 F.3d 1035, 1041 (8th Cir.

2021) (citation omitted). "To determine whether an officer had 'an objectively reasonable belief in the existence of probable cause,' this Court assesses 'the totality of the circumstances, including information known to the officer but not presented to the issuing judge.'" Norey, 31 F.4th at 635 (citation omitted). Further, we may consider whether the good-faith exception applies without considering whether probable cause to support the issuance of the search warrant exists. Id. "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the issuing judge's authorization." United States v. Williams, 976 F.3d 807, 809 (8th Cir. 2020) (citation omitted).

Lindsey contends that the Leon good-faith exception does not apply to the search warrants issued in this case because the affidavits "contained no allegation or suggestion that there was any reason why Lindsey would not have been allowed to possess the firearm [he was] alleged by the warrant affidavit to possess." Appellant Br. 20; see also Norey, 31 F.4th at 636 (explaining that one circumstance identified by Leon "in which an officer's reliance on a warrant is not in objective good faith" is where "the affidavit in support of the warrant is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'" (quoting Leon, 468 U.S. at 923)). We reject this contention. As found by the district court, one of the affidavits stated that the loaded handgun was found on the floor of the passenger side of the vehicle in which Lindsey was a passenger and beneath the seat which he had been occupying. It also set forth Lindsey's furtive movements, which, as described by Officer Woodward, were indicative of an individual removing an item from his pants pocket or waistband and placing it at his feet. It was also known by officers, including Officer Woodward, that Lindsey was a felon and prohibited by law from possessing a firearm. Officer Woodward had just seen live Snapchat videos showing D.G.-B.—another known felon and the driver of the vehicle that Lindsey occupied—in possession of what appeared to be a 9mm handgun. Finally, officers were aware of the July 3rd traffic stop during which an extended magazine for a 9mm

handgun was found in the glove compartment on the passenger side of the vehicle in which Lindsey was the front seat passenger. We agree with the district court that it was objectively reasonable for law enforcement officers to rely on the search warrants and, accordingly, the <u>Leon</u> good-faith exception applies.

## III.

We affirm the judgment of the district court.

_____