# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 23-2364

———————————————

United States of America

*Plaintiff - Appellee*

v.

Hugo Escudero

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of Minnesota

——————————

Submitted: February 16, 2024
Filed: May 2, 2024

——————————

Before BENTON, GRASZ, and STRAS, Circuit Judges.

——————————

GRASZ, Circuit Judge.

A jury convicted Hugo Escudero of possession of cocaine with intent to distribute. He raises a number of challenges, including the legitimacy of a GPS-tracking warrant, the admission of a message he sent a government witness, and the sufficiency of evidence for his guilty verdict. We affirm the district court.[1]

———————————

[1]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota.

# I. Background

In 2021, law enforcement officers investigated Escudero as a suspected wholesale cocaine dealer. The investigation started in July 2021, when a confidential informant told officers that Escudero and his brother, Joaquin Escudero, were selling large amounts of cocaine. The informant provided details about Escudero and Joaquin, including descriptions of their vehicles and residences. The informant said Escudero lived close to the campus of University of Minnesota–St. Paul and kept a "stash house" nearby. Escudero and Joaquin allegedly worked with a "runner," M.G., who delivered cocaine on their behalf.

Detective Antonio Patsy was one of the officers who investigated Escudero. To corroborate the informant's statements, Det. Patsy found Escudero's address in the Vehicle Services database and ran surveillance outside Escudero's residence multiple times a week. He then obtained a tracking warrant for Escudero's vehicle. Based on the tracking data, he obtained additional search warrants for Escudero's apartment and music studio (which was the alleged "stash house").[2]

In September 2021, officers used the informant to ask M.G. about buying a kilogram of cocaine. When Escudero and M.G. arrived with a kilogram of cocaine, officers arrested them. M.G. began cooperating with the government on the day of his arrest.

After Escudero was indicted, he filed a motion to suppress the evidence obtained from the tracking and search warrants, each authorized by a Minnesota state court judge. A federal magistrate judge held a motions hearing and recommended

---

[2]The officers waited until after a controlled buy occurred before executing the search warrants on Escudero's apartment and music studio.

denying Escudero's motions to suppress.  The district court adopted this recommendation.[3]

Escudero's trial began in December 2022.  M.G., as a government witness, testified how he and Escudero met more than a decade ago and how he eventually agreed to sell cocaine for Escudero.  M.G. also described the events leading up to their arrests.  After M.G. testified, Escudero posted a message on M.G.'s Facebook page in Spanish.[4]  It translated to English as, "nice to see you fool !!!  greetings to the family brother [sending you] a hug!!' 😎".

The next morning, the government informed the district court of the Facebook message.  The district court then granted three of the government's motions.  First, it admitted the Facebook message into evidence because it was "probative of the consciousness of guilt" and not unfairly prejudicial.  Second, it admitted Escudero's prior statements about obtaining the witness list to send to Mexico because "the combination of [Escudero's] statement pertaining to witness lists and [the] Facebook message create the strong implication of witness intimidation."  Third, the district court revoked Escudero's pretrial release.  When trial resumed, U.S. Marshals were in the courtroom.  M.G. testified that Escudero's Facebook message made him feel unsafe, and he took his family to a hotel the previous night due to the perceived threat.

---

[3]Escudero contested five tracking and search warrants: a tracking warrant for Escudero's car; a search warrant authorizing an examination of the seams of the door and exterior doorknob of Escudero's apartment for evidence of drug activity; a search warrant for Escudero's apartment for evidence of controlled substances; a search warrant authorizing an examination of the seams of the door and exterior doorknob of Escudero's music studio for evidence of drug activity; and a search warrant for Escudero's music studio for evidence of controlled substances. Only the tracking warrant for Escudero's vehicle is relevant to this appeal.

[4]The Facebook message said "gusto en verte foo !!! saludos a la family carnal un abrazo!!' 😎".

After deliberations, the jury returned a verdict finding Escudero guilty of possessing five or more kilograms of cocaine with intent to distribute. The district court sentenced Escudero to 216 months of imprisonment.

## II. Analysis

On appeal, Escudero challenges the legitimacy of the tracking warrant for his vehicle; the admission of his Facebook message to M.G.[5]; and the sufficiency of evidence for his guilty verdict. We address each issue in turn.

### A. Tracking Warrant

Escudero filed a motion to suppress evidence obtained from the GPS-tracking warrant on his vehicle due to a lack of probable cause. For denial of a motion to suppress, we "review[] the district court's factual findings for clear error and legal conclusions de novo." *United States v. Norey*, 31 F.4th 631, 635 (8th Cir. 2022). The district court properly denied Escudero's motion to suppress because the *Leon* good-faith exception to the exclusionary rule applied. *United States v. Leon*, 468 U.S. 897 (1984).

The exclusionary rule generally prohibits admission of evidence seized during an unlawful search, *United States v. Davis*, 760 F.3d 901, 903 (8th Cir. 2014), such as evidence obtained without probable cause. *Herring v. United States*, 555 U.S. 135, 136 (2009). But "before reviewing the existence of probable cause, [courts] may consider the applicability of the good-faith exception to the exclusionary rule, as established in *Leon*." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007). If the *Leon* good-faith exception applies, then we need not address whether probable cause exists. *Norey*, 31 F.4th at 635.

---

[5]Escudero also challenges the resulting revocation of his pretrial release and the resulting presence of U.S. Marshals in the courtroom.

Under the *Leon* good-faith exception, "evidence seized pursuant to a search warrant . . . that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." *Proell*, 485 F.3d at 430. In other words, the good-faith inquiry asks "whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006) (quoting *Leon*, 468 U.S. at 922 n.23) (alteration in original). *Leon* identified situations in which an officer's reliance on a warrant would be unreasonable, such as "when the affidavit in support of the warrant is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Proell*, 485 F.3d at 431 (quoting *Leon*, 468 U.S. at 923).

The circumstances here suggest Det. Patsy "had an objectively reasonable belief in the existence of probable cause." *See Norey*, 31 F.4th at 636. First, Det. Patsy knew information that "reinforces the objective reasonableness of his belief in probable cause." *See id.* Specifically, a confidential informant told officers Escudero sold cocaine throughout Minneapolis and St. Paul, so Det. Patsy could logically infer Escudero would use his car to transport cocaine. *See United States v. Lopez-Zuniga*, 909 F.3d 906, 911 (8th Cir. 2018) (noting it is reasonable for an officer to think a defendant "might use his car to move about in furtherance of a drug conspiracy"). Det. Patsy then independently corroborated the informant's statements through his own investigations by running surveillance outside Escudero's residence. Det. Patsy confirmed that a vehicle was registered to Escudero by looking up the Vehicle Identification Number, then tested the driver's side door handle for drug residue using an ion swab pad. The ion swab tested positive for the presence of cocaine, the very substance Escudero was suspected of selling. Cumulatively, the information known to Det. Patsy showed the necessary indicium of probable cause to make his reliance on the GPS-tracking warrant reasonable.

Second, no evidence suggests Det. Patsy acted in bad faith: he followed procedures and obtained incremental warrants to aid his investigation—such as by obtaining a tracking warrant before a search warrant. Further, the issuing judge thought Det. Patsy's affidavit included sufficient detail for probable cause purposes, which grants further credence to Det. Patsy's reasonable reliance on the affidavit. *See Leon*, 468 U.S. at 922 ("[A] warrant issued by a magistrate [judge] normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." (quotations omitted)). *See also United States v. Martin*, 833 F.2d 752, 756 (8th Cir. 1987) ("When judges can look at the same affidavit and come to differing conclusions, a police officer's reliance on that affidavit must, therefore, be reasonable.").

In sum, based on the totality of the circumstances, Det. Patsy's affidavit "was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *See United States v. Perry*, 531 F.3d 662, 667 (8th Cir. 2008). And because it was objectively reasonable for Det. Patsy to rely in good faith on the warrant, the *Leon* good-faith exception to the exclusionary rule applies, and the district court properly denied Escudero's motion to suppress.

## B. Witness Intimidation

### i. Admission of Facebook message and prior statements

The district court granted the government's motion to admit Escudero's Facebook message into evidence because the message was "probative of the consciousness of guilt" and not unfairly prejudicial. It also granted the government's motion to admit Escudero's prior statements about obtaining the witness list because "the combination of the defendant's statement pertaining to witness lists and [the] Facebook message create the strong implication of witness intimidation." We review a district court's evidentiary decisions, including evidence of witness intimidation, for an abuse of discretion. *See United States v. Zierke*, 618 F.3d 755,

759 (8th Cir. 2010). Based on our review, the district court did not abuse its discretion.

Threats against witnesses are "generally admissible against a criminal defendant to show consciousness of guilt of the crime charged." *Id.* In other words, threats against witnesses are admissible intrinsic evidence because "it directly relates to the charges that the defendant is facing." *United States v. Vaca*, 38 F.4th 718, 722 (8th Cir. 2022).

Escudero challenges the admissibility of his Facebook message to M.G., claiming "the statement was neither meant to be intimidating nor a threat." Escudero contends he meant the message to be a sincere expression of niceties between friends. But prior interactions between Escudero and M.G. provided further context for the message—Escudero had told M.G. that he wanted a copy of the government's trial witness list to send to unknown actors in Mexico, where many members of M.G.'s family live. Hence, M.G. could reasonably believe Escudero intended to harm his family members in Mexico. Given these circumstances, Escudero's Facebook message did not need to be directly threatening to constitute a threat. *See United States v. Maurstad*, 35 F.4th 1139, 1146 (8th Cir. 2022) ("[T]he Guidelines have a broad view of obstruction—it can vary in nature and seriousness, and does not require a direct threat."). Hence, the district court did not abuse its discretion in admitting Escudero's Facebook message and witness list comment.

### ii. Revocation of pretrial release and U.S. Marshals' presence

As a result of Escudero's Facebook message to M.G., the district court revoked Escudero's pretrial release and authorized U.S. Marshals to be present at trial. Escudero challenges both actions. We find his arguments unpersuasive.

First, Escudero's pretrial release argument became moot upon his conviction. *Murphy v. Hunt*, 455 U.S. 478, 481 (1982). Second, "[t]he need for and extent of security measures during trial are within the discretion of the trial court." *United*

-7-

*States v. Lee*, 886 F.2d 998, 1001 (8th Cir. 1989). Here, the district court properly exercised its discretion in taking proper security measures because the U.S. Marshals are expressly authorized to "provide for the personal protection of . . . witnesses, and other threatened persons in the interests of justice where criminal intimidation impedes on the functioning of the judicial process or any other official proceeding." 28 U.S.C. § 566(e)(1)(A). There was no abuse of discretion.

## C. Sufficiency of Evidence

Escudero did not move for judgment of acquittal during his trial proceedings, and the district court did not *sua sponte* grant a judgment of acquittal. Escudero now argues he was entitled to a judgment of acquittal because the government did not meet its burden of proof. We find this argument unpersuasive.

This court reviews challenges to the sufficiency of the evidence de novo. *United States v. King*, 898 F.3d 797, 808 (8th Cir. 2018). In reviewing the sufficiency of the evidence to support a guilty verdict, this court "view[s] evidence in the light most favorable to the jury's verdict, resolv[es] conflicts in the government's favor, and accept[s] all reasonable inferences that support the verdict." *United States v. Tillman*, 765 F.3d 831, 833 (8th Cir. 2014). A guilty verdict may be overturned "only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Flax*, 988 F.3d 1068, 1072 (8th Cir. 2021) (quoting *King*, 898 F.3d at 808). But if the defendant "did not move for judgment of acquittal at the close of the government's case, at the close of all evidence, or after the jury's verdict," then "we reverse only if the district court, in not *sua sponte* granting judgment of acquittal, committed plain error." *United States v. Calhoun*, 721 F.3d 596, 600 (8th Cir. 2013).

Because Escudero did not move for judgment of acquittal, we can only reverse if the district court committed a plain error in not acquitting Escudero *sua sponte*. *See id.* No such error exists. Escudero argues the evidence was not sufficient to convict him of possession because the government failed to prove he actually

possessed cocaine, the first element of his charged offense. *See United States v. Williams*, 39 F.4th 1034, 1044–45 (8th Cir. 2022) (stating elements of offense). But during trial, the jury heard that Escudero was the sole tenant of the music studio where the cocaine was found, and that he visited the studio "very frequent[ly]." M.G.'s testimony further detailed how the cocaine belonged to Escudero. Hence, a reasonable jury could have found Escudero guilty beyond a reasonable doubt, and the district court did not commit plain error for not *sua sponte* granting Escudero judgment of acquittal.

### III. Conclusion

For the foregoing reasons, we affirm.

_____