# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2855

_____

United States of America

*Plaintiff - Appellee*

v.

Tevin Thin Elk, Sr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Central

_____

Submitted: May 16, 2025
Filed: August 7, 2025

_____

Before BENTON, GRASZ, and STRAS, Circuit Judges.

_____

BENTON, Circuit Judge.

   Tevin Thin Elk, Sr. pled guilty to unlawfully possessing a firearm in violation of 18 U.S.C. §§ 922(g)(3), 924(a)(2), and 924(d). The district court[1] sentenced him

_____

[1]The Honorable Eric C. Schulte, United States District Judge for the District of South Dakota.

to time served. He appeals a pretrial motion to suppress. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

In August 2022, Rosebud Sioux Tribe (RST) Officer Joshua Marti observed "a black Chevy Impala that kept trying to stop and avoid being in front of him." Dispatch informed him that the plates were registered to a Cadillac, not an Impala. Officer Marti initiated a traffic stop outside an apartment building. Neither Lydia Stead, the driver, nor Thin Elk, the sole passenger, had ownership paperwork. Stead said the car belonged to her boyfriend. Officer Marti obtained the vehicle's VIN and Stead's and Thin Elk's driver's licenses. Returning to his patrol unit, he requested a K-9 and asked dispatch to run the VIN. Dispatch reported the car was not stolen. He then immediately asked dispatch to run warrants and license checks. Around the same time, RST Officer Ramon Marrufo, who heard the stop on the radio, drove to the apartment building with his K-9 Iwan.

Officer Marrufo arrived and asked Stead to exit the vehicle. He then deployed K-9 Iwan. Officer Marti was still waiting for dispatch to run the warrants and license checks. Because they were taking longer than normal, he began running the checks on his in-car computer. During this time, Iwan alerted to the odor of narcotics in the vehicle—about six to seven seconds after he began his sniff. After Iwan's alert, Officer Marti learned that Stead had an outstanding tribal warrant for her arrest. He exited his vehicle to arrest her. Officer Marrufo returned Iwan to his patrol vehicle and arrested Thin Elk.

The officers searched the Impala, finding a firearm in the backseat. On Thin Elk's person, Officer Marrufo seized a baggie of marijuana and a pen that tested positive for methamphetamine. Thin Elk moved to suppress the evidence obtained

from the search of the Impala and him. After two hearings on the motion, the court[2] denied it. This appeal followed.

## II.

"The Fourth Amendment protects against unreasonable searches and seizures. A traffic stop is a reasonable seizure if it is supported by probable cause or reasonable suspicion of criminal activity." *United States v. Brown*, 60 F.4th 1179, 1182 (8th Cir. 2023). Thin Elk does not contest the original purpose of the traffic stop (license plates not matching the vehicle). But he argues: (1) the court erred in finding he lacked standing to challenge the vehicle's search; (2) the search was unconstitutionally prolonged; and (3) Iwan's canine sniff did not establish probable cause to search him. This court reviews each claim under the same standard, reviewing "findings of fact for clear error and legal conclusions de novo." *United States v. Rodriguez*, 711 F.3d 928, 934 (8th Cir. 2013).

## A.

Thin Elk believes the court erred in concluding he lacked standing to challenge the search of the vehicle. "A person challenging the constitutionality of a search must demonstrate a legitimate expectation of privacy in the area searched—that is, he must have a subjective expectation of privacy that society is prepared to recognize as reasonable." *United States v. Wright*, 844 F.3d 759, 762 (8th Cir. 2016). Generally, "mere passengers, such as [Thin Elk], who have no ownership rights in a vehicle lack standing to challenge a search of the vehicle." *United States v. Lindsey*, 43 F.4th 843, 847 (8th Cir. 2022). Thin Elk, as the moving party, "bears the burden of proving he had a legitimate expectation of privacy that was violated

---

[2]The Honorable Roberto A. Lange, Chief Judge, United States District Court for the District of South Dakota, adopting the report and recommendation of The Honorable Mark A. Moreno, United States Magistrate Judge for the District of South Dakota.

by the challenged search." ***United States v. Muhammad***, 58 F.3d 353, 355 (8th Cir. 1995).

Thin Elk provided no evidence or testimony that he had any ownership rights in the vehicle. As Stead told Officer Marti, the vehicle belonged to her boyfriend. Thin Elk was a passenger. He did not have a reasonable expectation of privacy in the vehicle and cannot challenge its search. *See **United States v. Davis***, 943 F.3d 1129, 1134 (8th Cir. 2019) ("Because Davis lacks a reasonable expectation of privacy in the SUV as a passenger, he cannot assert a Fourth Amendment challenge to the vehicle search.").

B.

Thin Elk argues the search was unconstitutionally prolonged. An officer's authority to conduct a traffic stop "ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." ***United States v. Munoz***, 134 F.4th 539, 543 (8th Cir. 2025), *quoting **Rodriguez v. United States***, 575 U.S. 348, 354 (2015). These tasks can include inquiries such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." ***Rodriguez***, 575 U.S. at 355. "[A]s long as a traffic stop is not extended in order for officers to conduct a dog sniff, the dog sniff is lawful." ***United States v. Harry***, 930 F.3d 1000, 1005 (8th Cir. 2019).

Thin Elk thinks the stop should have ended when Officer Marti learned the vehicle was not stolen. But, as the district court said, "Officer Marti's mission was to ascertain whether the Impala had been stolen *and* decide whether to issue a citation for the license plate violation" (emphasis added). *See **Rodriguez***, 575 U.S. at 355 ("Beyond determining whether to issue a traffic ticket," an "officer's mission" involves "ordinary inquiries incident to [the traffic] stop" like "checking the driver's license" and "determining whether there are outstanding warrants against the driver").

-4-

Thin Elk does not argue that Officer Marti delayed the stop by calling for a K-9. Rather, he thinks the stop was impermissibly extended to wait for Iwan to conclude the canine sniff. Thin Elk says the district court "erred when determining that Marti was credible in testifying that he learned of Stead's warrant only after the purported canine alert on the vehicle." He alleges that Officer Marti waited for the canine sniff before exiting his vehicle. But "[c]redibility assessments are the province of the trial court." ***United States v. Strawther***, 125 F.4th 860, 864 (8th Cir. 2025). "The district court's estimation of a witness's credibility in a suppression hearing is virtually unassailable on appeal." ***Id***. (cleaned up). Indeed, the magistrate judge, who heard the testimony in person, found that Officer Marti "credibly testified that he learned of the warrant *after* the alert." And the district court said:

> Throughout his testimony, Officer Marti consistently testified that (1) he exited his car to speak with Stead as soon as he learned about her warrant, and (2) he learned about the warrant after Officer Marrufo and Iwan had finished the vehicle sniff. See Doc. 35 at 21, 22, 34, 35, 36, 40, 41. The record also shows that Officer Marti diligently pursued the mission of the stop. Instead of just waiting for dispatch to run the license and warrant check, Officer Marti conducted his own check when dispatch appeared to be "taking a little bit longer" than normal. Id,, at 16, 18.

These factual findings are not clearly erroneous. Because Officer Marti had not "completed the tasks related to the traffic stop" (i.e., checking the licenses for any outstanding warrants) until after the dog sniff, the district court did not err in determining that the traffic stop was not unreasonably prolonged or extended. ***United States v. Fuehrer***, 844 F.3d 767, 773 (8th Cir. 2016) (holding no extension of the traffic stop where one officer was conducting the dog sniff while the other was in the patrol car completing paperwork to issue a traffic warning). *See **Harry***, 930 F.3d at 1005 (8th Cir. 2019) (holding "the dog sniff did not extend the traffic stop" because, like here, the officers "simultaneously processed the traffic violation and concluded the dog sniff").

## C.

Thin Elk asserts that: (1) Iwan was not a reliable drug detection canine; and (2) his alert did not establish probable cause to search the vehicle or Thin Elk. As discussed, Thin Elk lacks standing to challenge the search of the vehicle. He does, however, have standing to challenge the officers' search of him. *See Lindsey*, 43 F.4th at 847 (holding that even "when a defendant lacks a possessory or property interest in the motor vehicle that would enable him to directly challenge the search [of the car], he may still contest the lawfulness of his own detention and seek to suppress evidence as the fruit of his illegal detention").

"A drug detection dog" like Iwan "is considered reliable when it has been trained and certified to detect drugs." *United States v. Winters*, 600 F.3d 963, 967 (8th Cir. 2010) (internal quotation marks omitted) (the determination about the credibility of a dog is a finding this court reviews for clear error). "If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search." *Florida v. Harris*, 568 U.S. 237, 246–47 (2013).

The evidence at the suppression hearings showed Iwan was a reliable, trained, and certified drug detection K-9. Officer Marrufo testified that he and Iwan were certified as a "canine unit" in 2016, after completing an eight-week training course. They were re-certified annually and completed an additional 16 hours of training monthly. They never failed a re-certification. Iwan had no failures or discrepancies in his monthly trainings. The most recent re-certification before the arrest was in April of 2022. Luis Rodriguez, a senior trainer at a "worldwide recognized training facility" where Iwan trained, also testified. He said that "[w]orking and training a dog is hard work" and one that is "a privilege" so he is "very strict." He said that during their most recent training, Iwan and Officer Marrufo "found every single odor without having any issues at all." He said Iwan and Officer Marrufo were a "good team." The court did not clearly err in determining Iwan was a reliable drug detection dog. *See Harris*, 568 U.S. at 246–47; *Winters*, 600 F.3d at 967–68.

Thin Elk argues Iwan's alert did not establish probable cause to search the vehicle. Thin Elk focuses on the lack of Iwan's final indication—a "trained response to the odor of narcotics" rather than an untrained one. But this is not necessary. *See United States v. Holleman*, 743 F.3d 1152, 1156–57 (8th Cir. 2014) (holding that the court is "not concerned about" the dog's "failure to give a full indication" because it gave "two definitive 'alerts'"). Rather, an alert or an indication "by a properly trained and reliable drug dog provides probable cause for the arrest and search of a person or for the search of a vehicle." *Winters*, 600 F.3d at 967. The inquiry is "whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Harris*, 568 U.S. at 248.

Supporting his position, Thin Elk cites the testimony of Dr. Mary Cablk, a former research professor specializing in "canine detection science." Dr. Cablk testified that to form an opinion, she reviewed body camera footage from the traffic stop, the transcript from the first suppression hearing, and Iwan's training certificate. Dr. Cablk opined that Iwan did not detect "an odor that he was trained to detect" and, therefore, there was no probable cause to search the vehicle. She believed that Officer Marrufo's "cognitive bias" affected his handling of Iwan. She also questioned Iwan's quick alert, but admitted she had seen "sniffs that are this short." The magistrate judge found that Dr. Cablk "largely disregards the long-standing relationship between Marrufo and Iwan" and "only observed Iwan sniff for drug odors once." The judge said that Dr. Cablk's suggestion that Officer Marrufo's "cognitive bias" that he was "probably going to find drugs" was "both speculative and assuming."

In addition to Dr. Cablk's testimony, the court heard Officer Marrufo testify. He shared his observations of Iwan's behavior alerting to the odor of narcotics over the course of 6 years and approximately 1,000 sniffs. Here, he testified that Iwan was pulling him towards the vehicle (a sign of narcotics' odor). He also said that he "observed [Iwan] was sniffing, but the speed in which he was inhaling had changed to which I know, over our training and experience, is an alert . . . that there was a

-7-

presence of odor of narcotics."  Asked to describe the change in Iwan's behavior, Officer Marrufo testified that "when he sniffs along the side of the seam of a vehicle, your Honor, he's breathing through his nose.  But when he gives an alert, he stops for a brief second and he sniffs.  His breathing becomes rapid like he's actually, like, trying to sniff something through his nose."  He said that "through our years together, Your Honor, I could tell the difference when he's just sniffing a vehicle to when he's actually in odor."

The magistrate judge considered all the evidence, including the testimony of Dr. Cablk, Senior Trainer Rodriguez, and Officer Marrufo, the training records, and videos of the traffic stop and sniff itself.  It credited the testimony of Officer Marrufo and Senior Trainer Rodriguez over Dr. Cablk.  The "decision to credit a witness's testimony over that of another can almost never be clear error unless there is extrinsic evidence that contradicts the witness's story or the story is so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit it."  *United States v. Harper*, 787 F.3d 910, 914 (8th Cir. 2015).  The magistrate judge did not clearly err in concluding that, by the totality of circumstances, Iwan was a reliable, certified drug K-9 who alerted to the odor of narcotics coming from the Impala.  This alert gave officers probable cause to search the vehicle.  *United States v. Rederick*, 65 F.4th 961, 968–69 (8th Cir. 2023) (holding the district court did not "clearly err" by discrediting Dr. Cablk's testimony and "concluding by the totality of circumstances" that the dog "was reliable and the alert provided probable cause to search").

\* \* \* \* \* \* \*

The judgment is affirmed.

_____